| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

**PLAINTIFFS**

Harold Blackwelder

**DEFENDANTS**

Jason Michael Pool, Jennifer Ann Pool

**ATTORNEYS** (Firm Name, Address, and Telephone No.)

Brian P. Hayes
Ferguson, Hayes, Hawkin & DeMay, PLLC PO Box 444 Concord, NC 28026-0444

**ATTORNEYS** (If Known)

**PARTY** (Check One Box Only)
☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin
☑ Creditor  ☐ Other
☐ Trustee

**PARTY** (Check One Box Only)
☑ Debtor  ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor  ☐ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Objection to Discharge:  11 USC 727(a)(4)(a); 11 USC 727 a4C; 11 USC 523(a)(2)

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☑ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☑ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Jason Michael Pool and Jennifer Ann Pool | BANKRUPTCY CASE NO.<br>17-30860 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Western District, NC | DIVISION OFFICE<br>Charlotte | NAME OF JUDGE<br>Whitley |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>08/28/2017 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Brian P. Hayes | |

## INSTRUCTIONS

   The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

   A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet. CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to
process the adversary proceeding and prepare required statistical reports on court activity.

   The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| In re<br>Jason Michael Pool and wife<br>Jennifer Ann Pool<br>        Debtor | Case No:   17-30860 |
| Harold Blackwelder<br>        Plaintiffs,<br><br>vs<br><br>Jason Michael Pool and wife<br>Jennifer Ann Pool<br>        Defendant | Adversary Proceeding:  17- |

## COMPLAINT OBJECTING TO DISCHARGE

**NOW COMES** Harold Blackwelder (hereinafter referred to as 'Plaintiff') who by and through the undersigned Counsel, complaining of the Defendants Jason Michael Pool and wife Jennifer Ann Pool (hereinafter referred to as 'Defendants' or 'Debtors') hereby alleges and says as follows:

    1.     Plaintiff Harold Blackwelder is a citizen and resident of Cabarrus County, North Carolina.

    2.     Defendant Jason Michael Pool is a citizen and resident of Cabarrus County, North Carolina and is neither an infant, incompetent or member of the armed services.

    3.     Defendant Jennifer Ann Pool is a citizen and resident of Cabarrus County, North Carolina and is neither an infant, incompetent or member of the armed services.

    4.     Defendants petitioned this Court for relief pursuant Chapter 7 through an order for relief filed May 24, 2017 in the Western District of North Carolina, Charlotte Division.

    5.     This is an adversary proceeding in the debtor's Chapter 7 case 17-30860 filed pursuant to Chapter 7 of Title 11 of the United States Bankruptcy Code which is now pending before this Court. This Court has jurisdiction over the adversary proceeding pursuant to 11 USC §§ 727 and 523 of the Code.

6.    Plaintiff is a North Carolina licensed real estate agent and Realtor. On February 22, 2017 debtor Jason Poole along with debtor Jennifer A. Poole signed and contracted with Bestway Realty, Inc. granting Bestway Realty, Inc. the exclusive right to sell listing agreement pursuant to the exclusive right to sell listing agreement form and contract, attached hereto as **Exhibit A** (the "Listing Agreement"). Said Listing Agreement granted plaintiff the exclusive right to list the defendant's real property located at 9281 Perseverance Drive Harrisburg, Cabarrus County, North Carolina, 28075, being Lot 131 of Brookdale Commons, Phase 2, Map 3, Subdivision, up through and until August 17, 2017. Pursuant to said listing agreement in section 12, paragraph h, page 6, **sellers specifically represented that "seller currently is not under bankruptcy protection under United States Law.    Seller is not currently contemplating seeking bankruptcy protection during the term of this agreement."**

7.    In reliance thereupon, Plaintiff did dutifully thereafter show and market the subject real property in a professional manner, and did on April 13, 2017 obtain a written offer to purchase and contract for the sale of the property for a purchase price of $325,000 (the "Sales Contract"), a copy of which is attached hereto as **Exhibit B**. Defendants accepted and executed the sales contract and agreed, in accordance thereto, and pursuant to Section 1, Paragraph 1 (page 2 of 13) to a settlement date of May 15, 2017.

8.    The prospective purchasers provided a due diligence fee in accordance with the contract on or about April 14, 2017 in the amount of $250 to defendants by and through a personal check, a copy of which is attached hereto as **Exhibit C**.

9.    In reliance upon the listing agreement and the executed contract, Plaintiff did continue to perform its associated duties as the listing agent for the defendants in establishing closing dates and assisting to resolve and manage issues between the seller/defendants and the prospective purchaser as well as the purchaser's real estate agent.

10.    Thereafter, on April 29, 2017, pursuant to the request of the defendants, there was prepared an agreement to amend contract by virtue of which it was proposed that the settlement date be changed to May 30, 2017, a copy of the agreement to amend contract is attached hereto as **Exhibit D**.

11.    Following the amendment to the contract and without prior notice, defendants filed a petition pursuant to Chapter 7 of the Bankruptcy Code on May 24, 2017.

12.    Based upon the reliance on the original contract all parties had been prepared to close, and the prospective buyer arranged his living condition in expectation of a closing to be conducted on May 15, 2017 in accordance with the Sales Contract.

13.    The debtors filed their petition in bankruptcy on May 24, 2017 having stated and upon information and belief signed their petition under penalty of perjury pursuant to declarations stating that "I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct... I understand making a false statement, concealing property or obtaining or property by fraud in connection with the bankruptcy case can result in fines up to $250,000 or imprisonment for up to 5 years, or both 18 USC § 152, 1341, 1519, and 3571.

14.    The debtors 341 meeting was conducted on June 28, 2017 pursuant Order of the Court, and at such meeting the debtors confirmed having signed their petition and in response to initial questions declined acknowledging or identifying any intent to make amendments thereto.

15.    Despite signing their petition under penalty of perjury, the debtors at the time of the signing, and with full knowledge of the outstanding executory contract for the home in the amount of $325,000 which was scheduled to close just nine (9) days before, the debtors scheduled the value of the real property located at 9281 Perseverance Drive in the amount of $275,000.

16.    Plaintiffs would show that the Cabarrus County assessed value for the subject property as determined by the Cabarrus County land records office on June 30, 2015 was $289,210, a copy of the appraisal card is attached hereto as **Exhibit E**. Debtors schedule A/B as filed with their petition is attached hereto as **Exhibit F**.

### FIRST CLAIM FOR RELIEF
**(For a determination that defendants should be denied a discharge pursuant to 11 USC § 727(a)(4)(A)**

17.    Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

18.    Pursuant to 11 USC § 727(a)(4)(A), the Court shall grant the debtor a discharge unless …the debtor knowingly and fraudulently in or in connection with the case made a false oath or account.

19.    The debtors' execution of the petition and the schedules attached thereto constitute an oath and verified pleading presented to this Court upon which the Court, the Trustee, and other parties should be entitled to rely.

20.    The Bankruptcy Court, and the Bankruptcy code relies upon a system of self-reporting to ensure compliance therewith. Accordingly, penalties for violation including the making of false oaths and accounts and for violation of oaths are significant and include as set forth above the imposition of penalties such as the filing of $250,000 and/or imprisonment for up to five (5) years.

21.    In addition thereto, the Court is authorized with the ability to revoke the debtors' ill-begotten gains to be acquired through their material misstatements. Once such remedy is the denial of the debtor's discharge pursuant to §727 of the Code.

22.    As previously set forth above, the debtors clearly, and with full knowledge of the outstanding offer on the subject real property, misstated the value of said real property to the Court. Schedule A/B in Section 1.1 required the debtors to state the current value of the entire property concerning which the debtors stated such value to be $275,000.

23.     It is well established that the value, or the market value of property is the price which would be paid by a willing buyer to a willing seller, neither being under the obligation to buy or sell.

24.     Despite such definition and despite the value asserted in their petition by the defendants were unwilling to sell and relinquish the property even for the $325,000 contract price—a fact indicative of an even greater expectation of value.

25.     Based upon the execution of the Listing Agreement in February, 2017 and the Sales Agreement on April 13, 2017, it is clear that, the defendants were willing sellers of the property.

26.     Based upon the foregoing, Plaintiffs would submit that the property was worth at the time of defendants' execution of the petition at least $325,000.

27.     Accordingly, the debtors' statement of value in Schedule A/B with such knowledge, was knowingly untrue and fraudulently represented, and such representation constitutes a false oath for which the debtors' discharge should be denied pursuant to 727(a)(4)(A) of the Bankruptcy Code.

## SECOND CAUSE OF ACTION
### (For a determination that defendants should be denied a discharge Pursuant to 11 USC § a4C)

28.     The Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

29.     Pursuant to 11 USC § 727(a)(4)(C), the Court shall grant the debtor a discharge unless ...the debtor knowingly and fraudulently in or in connection with the case gave, offered, received, or attempted to obtain money, property or advantage, or a promise of money, property or advantage, where acting or preparing to act...

30.     In relation to the foregoing, Plaintiff would show that the debtor, following the misstatement of the value of the real property, did in and on Schedule C of the bankruptcy petition and schedules attempt to assert an exemption in an unstated amount, but up to 100% of the value of the residential real property, asserting the basis for such exemptions to be pursuant to NCGS § 1C-1601(a)(1).

31.     The exemption provided in N.C.G.S. §1C-1601(a)(1) is clearly for a sum certain, and does not relate to a percentage in the property.

32.     Based upon the fair market value of the property being equal or in excess of $325,000 as previously set forth, and in light of the outstanding mortgage amount of $270,145.25 owed to Cardinal Financial Company as set forth on Schedule D it would appear that the debtor held equity in the property of $54,854.75. As the maximum statutory exemption allowed pursuant to NCGS § 1C-1601(a)(1) would be $35,000 the debtors attempted to obtain an exemption excess value of $19,854.75.

33.     Through the debtors intentional, knowing and fraudulent misstatement, the debtor has attempted to obtain property and advantage in accordance with 11 USC § 727(a)(4)(C).

**THIRD CAUSE OF ACTION**
**(Exception to discharge of Plaintiff's claim pursuant to 11 USC § 523(a)(2))**

34.     Plaintiff hereby reincorporates the foregoing paragraphs as if fully set forth herein.

35.     The debtor executed an exclusive right to sell listing agreement with Plaintiff, and relying upon such, the plaintiff dutifully and efficiently listed, advertised and procured a buyer for the debtors' real property in accordance with the agreement.

36.     Upon information and belief, at the time of the execution of the listing agreement, or at some subsequent point thereafter, but following which the plaintiff was encouraged to continue performing work, the debtors manifested for themselves an intention to file bankruptcy which was never relayed to plaintiff.  In continued reliance upon the debtors' representations in the listing agreement, including specific the provision set forth above in which the debtors declared the absence of a bankruptcy filing as well as the absence of the intention or plan to file bankruptcy, debtors continued to encourage plaintiff to perform work.

37.     Despite the knowledge of the intention to file bankruptcy, the debtors did, on April 29, 2017 execute the contract amendment to extend the closing date until May 30, 2017, creating in effect, a continued representation by the debtors to sell the subject real property, and thereby continuing to falsely and fraudulently represent their intention to Plaintiff.

38.     The Code in 11 USC § 523, exceptions to discharge, provides that: (a) a discharge under 727...of this title does not discharge an individual debtor from any debt (2) for money, property, services or an extension, renewal or refinancing of credit to the extent obtained by (A) false pretenses, a false representation or actual fraud other than a statement respecting the debtors or an insiders financial condition....

39.     Plaintiff would show that Plaintiff's services were performed based upon and in reliance upon the false pretenses, false representations and actual fraudulent conduct of the debtors.

40.     The debtors have scheduled the obligation owed to Plaintiff to be the full contract amount pursuant the exclusive listing agreement, based upon the offer to purchase and contract, in the amount of $19,500.  Plaintiff would submit that said obligation should be deemed and declared to be non-dischargeable pursuant to §523 of the Bankruptcy Code.

41.     The claim of Plaintiff is based upon a listing agreement for the performance of services, and is not, and does not, constitute a consumer debt pursuant to §523 of the Code.

**WHEREFORE**, the Plaintiff prays that the Court:

1.     Deny the debtor a discharge pursuant to 11 USC § 727(a)(4)(A); and/or

2.	Deny the debtors' discharge pursuant to 11 USC § 727(a)(4)(C);

3.	Determine that the obligation owed to Plaintiff is excepted from discharge pursuant to 11 USC § 523(a)(2);

4.	Tax the cost of this action against the debtors; and

4.	That the Court allow such other and further relief as to the Court may seem just and proper.

Respectfully submitted this the 23rd day of August, 2017.

Brian P. Hayes
Ferguson, Hayes, Hawkins & DeMay, PLLC
Attorney for Plaintiff
45 Church Street
P.O. Box 444
Concord, North Carolina 28026-0444
Telephone: 704-788-3211
State Bar No. 27017


PLAINTIFF'S
EXHIBIT
A

## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT
[Consult "Guidelines" (Form 101G) for guidance in completing this form]

This __EXCLUSIVE__ __RIGHT__ TO __SELL__ __LISTING__ __AGREEMENT__ ("Agreement") is entered into between _Jason M. Pool A/W Jennifer A. Pool_ as Seller(s) ("Seller") of the property described below (the "Property"), and _____Bestway Realty, Inc._____ as Listing Firm ("Firm"). The individual agent who signs this Agreement shall, on behalf of the Firm, be primarily responsible for ensuring that the Firm's duties hereunder are fulfilled; however, it is understood and agreed that other agents of the Firm may be assigned to fulfill such duties if deemed appropriate by the Firm. For purposes of this Agreement, the term "Firm," as the context may require, shall be deemed to include the individual agent who signs this Agreement and any other agents of the Firm.

In consideration for Firm's services and efforts to find a buyer for the Property, Firm is hereby granted the exclusive right to sell the Property on the terms and conditions set forth in this Agreement.

Seller represents that as of the Effective Date the Seller is not (or will not be, if the Property is currently listed) a party to a listing agreement with any other real estate firm regarding the Property. Seller also represents that Seller has received a copy of the "WORKING WITH REAL ESTATE AGENTS" brochure and has reviewed it with Firm.

1. **TERM OF AGREEMENT.**
   (a) **Term.** The term of this Agreement ("Term") shall begin on its Effective Date and shall end at midnight on its Expiration Date.
   (b) **Effective Date.** This Agreement shall become effective and the Seller and Firm's respective rights and obligations under this Agreement shall commence ("Effective Date") as follows *(check appropriate box)*:
   ☑ The Effective Date shall be the date that this Agreement has been signed by both Seller and Firm
   ☐ The Property is currently listed for sale exclusively with another real estate firm. Seller represents that the current listing agreement expires on ____n/a____ . The Effective Date of this Agreement shall commence immediately upon the expiration of the current listing agreement. (NOTE: According to Article 16 of the REALTORS® Code of Ethics: *"REALTORS® shall not engage in any practice or take any action inconsistent with exclusive representation or exclusive brokerage relationship agreements that other REALTORS® have with clients."*)
   (c) **Expiration Date.** This Agreement shall terminate at midnight on ____8-17-17____ ("Expiration Date").

2. **PROPERTY.** The Property that is the subject of this Agreement shall include all that real estate described below together with all appurtenances thereto including the improvements located thereon and the fixtures and personal property listed in Paragraphs 3 and 4 below.
   Street Address: _9281 Perseverance Drive_
   City: _Harrisburg_ Zip _28075_
   County: _Cabarrus_ , North Carolina
   (NOTE: Governmental authority over taxes, zoning, school districts, utilities and mail delivery may differ from address shown.)
   Legal Description: (Complete ALL applicable)
   - Plat Reference: Lot/Unit __13__ , Block/Section __n/a__ , Subdivision/Condominium _Brookdale_ _Commons Phase 2, Map 3_ , as shown on Plat Book/Slide __64__ at Page(s) _3 94 40_
   - The PIN/PID or other identification number of the Property is: _____
   - Other description: _____n/a_____
   Some or all of the Property may be described in Deed Book ____1114____ at Page ____53____

3. **FIXTURES AND EXCLUSIONS.**
   (a) **Items Leased or Not Owned:** Any item which is leased or not owned by Seller, such as fuel tanks, antennas, satellite dishes and receivers, appliances, and alarm and security systems must be identified here and shall not convey. _None_

   _____

   (b) **Specified Items:** Unless identified in subparagraph (d) below the following items, if any, are deemed fixtures and are included in the Purchase Price free of liens: range/stove/oven, any built-in appliances, light fixtures, ceiling fans, attached floor coverings, blinds, shades, drapery rods and curtain rods, brackets and all related hardware, window and door screens, storm windows, combination doors, awnings, antennas, satellite dishes and receivers, mounting brackets for televisions and for speakers and all related hardware, burglar/fire/smoke/carbon monoxide alarms and security systems, pool, hot tub, spa and all related equipment, solar energy systems, attached fireplace screens, gas logs, fireplace inserts, electric garage door openers with controls, outdoor plants and trees (other than in movable containers), basketball goals, storage sheds, mailboxes, all bathroom wall mirrors and all attached wall and/or door mirrors,

STANDARD FORM 101
Revised 7/2016
© 7/2016

Individual agent initials ____ Seller initials ____

Bestway Realty, 4624 Hwy 49/ Bestway Center Harrisburg, NC 28075      Phone: (704)455-5508      Fax: (704)200-2747      Sellers
Harold Blackwelder          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.ziplogix.com

fuel tank(s) whether attached or buried and including any contents that have not been used, removed or resold to the fuel provider as of Settlement, * landscape and/or foundation lighting, invisible fencing including all related equipment, lawn irrigation systems and all related equipment, and water softener/conditioner and filter equipment.

(c) **Other Fixtures/Unspecified Items:** Unless identified in subparagraph (d) below, any other item legally considered a fixture is included in the Purchase Price free of liens.

(d) **Other Items That Do Not Convey:** The following items shall not convey (*identify those items to be excluded under subparagraphs (b) and (c)*): ___None___

Seller shall repair any damage caused by removal of any items excepted above.

*NOTE: Seller's use, removal or resale of fuel in any fuel tank is subject to Seller's obligation under Paragraph 8(c) to provide working, existing utilites through the earlier of Closing or possession by Buyer.

4. **PERSONAL PROPERTY.** The following personal property shall be transferred to Buyer at no value at Closing: ___None___

5. **HOME WARRANTY.** Seller ☐ agrees ☑ does not agree to obtain and pay for a settlement a one year home warranty for the Property at a cost not to exceed $ ___n/a___. If Seller agrees to obtain and pay for a home warranty at any time, Firm hereby discloses that a fee of ___n/a___ will be offered to Firm by the person or entity through or from which any home warranty is obtained as compensation to Firm for its assistance in obtaining the home warranty, and Seller hereby consents to Firm's receipt of such fee.

6. **LISTING PRICE.** Seller lists the Property at a price of $ _329,900_. _____ on the following terms:
☑ Cash ☑ FHA ☑ VA ☐ USDA ☑ Conventional ☐ Loan Assumption ☐ Seller Financing ☐ Other _____.
Seller agrees to sell the Property for the Listing Price or for any other price or on any other terms acceptable to Seller.

7. **FIRM'S COMPENSATION.**
   (a) **Fee.** Seller agrees to pay Firm a total fee of _____ _6_ % of the gross sales price of the Property, OR _____ n/a

("Fee"), which shall include the amount of any compensation paid by Firm as set forth in paragraph 8 below to any other real estate firm, including individual agents and sole proprietors ("Cooperating Real Estate Firm").

   (b) **Fee Earned.** The Fee shall be deemed earned under any of the following circumstances:

   (i) If a ready, willing and able buyer is procured by Firm, a Cooperating Real Estate Firm, the Seller, or anyone else during the Term of this Agreement at the price and on the terms set forth herein, or at any price and upon any terms acceptable to the Seller;

   (ii) If the Property is sold, optioned, exchanged, conveyed or transferred, or the Seller agrees, during the Term of this Agreement or any renewal hereof, to sell, option, exchange, convey or transfer the Property at any price and upon any terms whatsoever; or

   (iii) If the circumstances set out in (i) or (ii) above have not occurred, and if, within ___30___ days after the Expiration Date ("Protection Period"), Seller either directly or indirectly sells, options, exchanges, conveys or transfers, or agrees to sell, option, exchange, convey or transfer the Property upon any terms whatsoever, to any person with whom Seller, Firm, or any Cooperating Real Estate Firm communicated regarding the Property during the Term of this Agreement or any renewal hereof, provided the names of such persons are delivered or postmarked to the Seller within 15 days after the Expiration Date. HOWEVER, Seller shall NOT be obligated to pay the Fee if a valid listing agreement is entered into between Seller and another real estate broker and the Property is subsequently sold, optioned, exchanged, conveyed or transferred during the Protection Period.

   (c) **Fee Due and Payable.** Once earned as set forth above, the Fee will be due and payable at the earlier of:

   (i) Closing on the Property;

   (ii) The Seller's failure to sell the Property (including but not limited to the Seller's refusal to sign an offer to purchase the Property at the price and terms stated herein or on other terms acceptable to the Seller, the Seller's default on an executed sales contract for the Property, or the Seller's agreement with a buyer to unreasonably modify or cancel an executed sales contract for the Property); or

   (iii) Seller's breach of this Agreement.

   (d) **Transfer of Interest in Business Entity.** If Seller is a partnership, corporation or other business entity, and an interest in the partnership, corporation or other business entity is transferred, whether by merger, outright purchase or otherwise, in lieu of a sale of the Property, and applicable law does not prohibit the payment of a fee or commission in connection with such sale or transfer, the Fee shall be calculated on the fair market value of the Property, rather than the gross sales price, multiplied by the percentage of interest so transferred, and shall be paid by Seller at the time of the transfer.

Page 2 of 9

Individual agent initials _____ Seller initials _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

(e) **Additional Compensation.** If additional compensation, incentive, bonus, rebate and/or other valuable consideration ("Additional Compensation") is offered to the Firm from any other party or person in connection with a sale of the Property, Seller will permit Firm to receive it in addition to the Fee. Firm shall timely disclose the promise or expectation of receiving any such Additional Compensation and confirm the disclosure in writing before Seller makes or accepts an offer to sell. (NOTE: NCAR Form #770 may be used to confirm the disclosure of any such Additional Compensation).

(f) **Attorney Fees and Costs.** If Firm is the prevailing party in any legal proceeding brought by Firm against Seller to recover any or all of the Fee, Firm shall be entitled to recover from Seller reasonable attorney fees and court costs incurred by Firm in connection with the proceeding.

8. **COOPERATION WITH/COMPENSATION TO OTHER FIRMS.** Firm has advised Seller of Firm's company policies regarding cooperation and the amount(s) of any compensation that will be offered to other brokers, including but not limited to, seller subagents, buyer agents or both, brokers who do or do not participate in a listing service and brokers who are or are not REALTORS®. Seller authorizes Firm to *(Check ALL applicable authorizations)*:

☑ Cooperate with subagents representing the Seller and offer them the following compensation: _____ _3_ % of the gross sales price or $ _____ n/a _____ ; and/or,

☑ Cooperate with buyer agents representing the buyer and offer them the following compensation: _____ _3_ % of the gross sales price or $ _____ n/a _____ ; and/or,

☐ Cooperate with and compensate other Cooperating Real Estate Firms according to the Firm's attached policy.

Firm will promptly notify Seller if compensation offered to a Cooperating Real Estate Firm is different from that set forth above. Agents with Cooperating Real Estate Firms must orally disclose the nature of their relationship with a buyer (subagent or buyer agent) to Firm at the time of initial contact with Firm, and confirm that relationship in writing no later than the time an offer to purchase is submitted for the Seller's consideration. Seller should be careful about disclosing confidential information because agents representing buyers must disclose all relevant information to their clients.

9. **FIRM'S DUTIES.** Firm agrees to provide Seller the benefit of Firm's knowledge, experience and advice in the marketing and sale of the Property. Seller understands that Firm makes no representation or guarantee as to the sale of the Property, but Firm agrees to use its best efforts in good faith to find a buyer who is ready, willing and able to purchase the property. In accordance with the REALTORS® Code of Ethics, Firm shall, with Seller's approval, in response to inquiries from buyers or Cooperating Real Estate Firms, disclose the existence of offers on the Property. Where Seller authorizes disclosure, Firm shall also disclose whether offers were obtained by the individual agent who signs this Agreement, another agent of the Firm, or by a Cooperating Real Estate Firm. Seller acknowledges that real estate brokers are prohibited by N.C. Real Estate Commission rule from disclosing the price or other material terms contained in a party's offer to purchase, sell, lease, rent or option real property to a competing party without the express authority of the party making the offer.

Seller acknowledges that Firm is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which the Firm knows or reasonably should know, and that REALTORS® have an ethical responsibility to treat all parties to the transaction honestly. Seller further acknowledges that Firm is being retained solely as a real estate professional, and understands that other professional service providers are available to render advice or services to Seller, including but not limited to an attorney, insurance agent, tax advisor, surveyor, structural engineer, home inspector, environmental consultant, architect, or contractor. Although Firm may provide Seller the names of providers who claim to perform such services, Seller understands that Firm cannot guarantee the quality of service or level of expertise of any such provider. Seller agrees to pay the full amount due for all services directly to the service provider whether or not the transaction closes. Seller also agrees to indemnify and hold Firm harmless from and against any and all liability, claim, loss, damage, suit, or expense that Firm may incur either as a result of Seller's selection and use of any such provider or Seller's election not to have one or more of such services performed.

**THE AGENT (FIRM) SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT. FURTHER, REALTORS® HAVE AN ETHICAL DUTY TO CONDUCT SUCH ACTIVITIES WITHOUT RESPECT TO THE SEXUAL ORIENTATION OR GENDER IDENTITY OF ANY PARTY OR PROSPECTIVE PARTY TO THIS AGREEMENT.**

10. **MARKETING.**

(a) Marketing Date. Firm's authorization to market the Property as described in subparagraph (b) below shall be effective on: ☑ the Effective Date of this Agreement OR ☐ (insert date) _____ ("Marketing Date"). (NOTE: None of the marketing activities authorized in subparagraph (b) below are permitted prior to the Marketing Date)

(b) Marketing Authorization. Seller authorizes Firm *(Check ALL applicable sections)*:

☑ Signs. To place "For Sale," "Under Contract," "Sale Pending," or other similar signs on the Property (where permitted by law and relevant covenants) and to remove other such signs.

Individual agent initials _____ Seller initials _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

☑ **Open Houses.** To conduct open houses of the Property at such times as Seller and Firm may subsequently agree.

☑ **Listing Service.** To submit pertinent information concerning the Property to any listing service of which Firm is a member or in which any of Firm's agents participate and to furnish to such listing service notice of all changes of information concerning the Property authorized in writing by Seller. Seller authorizes Firm, upon execution of a sales contract for the Property, to notify the listing service of the pending sale and the expiration date of any due diligence period, and upon closing of the sale, to disseminate sales information, including sales price, to the listing service, appraisers and real estate brokers.

☑ **Advertising Other Than On The Internet.** To advertise the Property in non-Internet media, and to permit other firms to advertise the Property in non-Internet media to the extent and in such manner as Firm may decide.

☑ **Internet Advertising.** To display information about the Property on the Internet either directly or through a program of any listing service of which the Firm is a member or in which any of Firm's agents participate. Seller further authorizes other firms who belong to any listing service of which the Firm is a member or in which any of Firm's agents participate to display information about the Property on the Internet in accordance with the listing service rules and regulations, and also authorizes any listing service of which the Firm is a member or in which any of Firm's agents participate to use, license or sell to others information about the Property entered into the listing service. Seller specifically authorizes the display of the address of the Property, automated estimates of the market value of the Property and third-party comments about the Property. If seller desires to limit or prohibit Internet advertising as set forth above, seller must complete an opt-out form in accordance with listing service rules.

(NOTE: NCAR Form #105 may be used to limit or prohibit Internet advertising and explains how such limitations may or may not be effective.)

(c) **Lock/Key Boxes.** The Seller ☑ does ☐ does not authorize Firm to place lock/key boxes on the Property.

(d) **Seller Acknowledgement.** Seller acknowledges and understands that while the marketing services selected above will facilitate the showing and sale of the Property, there are risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of the Firm, including but not limited to:

(i) unauthorized use of a lock/key box,

(ii) control of visitors during or after a showing or an open house,

(iii) inappropriate use of information about the Property placed on the Internet or furnished to any listing service in which the Firm participates, and

(iv) information about the Property placed on the Internet by or through any listing service in which the Firm participates which is inaccurate or dated.

Seller therefore agrees to indemnify and hold harmless Firm from any damages, costs, attorneys' fees and other expenses as a result of any personal injury, property loss or damage, or monetary loss to Seller or any other person not caused by Firm's negligence arising directly or indirectly out of any such marketing services.

11. **EARNEST MONEY.** Unless otherwise provided in the sales contract, any initial and additional earnest money deposits and any other earnest monies paid in connection with any transaction shall be held by the Firm, in escrow, until the consummation or termination of the transaction. Any earnest money forfeited by reason of the buyer's default under a sales contract shall be divided equally between the Firm and Seller. In no event shall the sum paid to the Firm because of a buyer's default be in excess of the fee that would have been due if the sale had closed as contemplated in the sales contract. In accordance with NC General Statutes Section 93A-12, if a dispute regarding the return or forfeiture of any earnest money deposit arises between Seller and the buyer, the escrow agent holding the deposit may deposit the disputed monies with the appropriate Clerk of Court following written notice to the parties. In the event of any such dispute, Seller directs Firm to disclose Seller's last known mailing address to the escrow agent upon request to enable the escrow agent to comply with the notice requirement of such law.

12. **SELLER REPRESENTATIONS.**

(a) **Flood Hazard Disclosure/Insurance.** To the best of Seller's knowledge, the Property ☐ is ☑ is not located partly or entirely within a designated Special Flood Hazard Area. The Seller ☐ does ☑ does not currently maintain flood hazard insurance on the Property.

(b) **Synthetic Stucco.** To the best of Seller's knowledge, the Property has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system," commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows:
いい

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

(c). Owners' Association.

(i) Complete ONLY if the Residential Property and Owner's Association Disclosure Statement is required: The name, address and telephone number of the president of the owners' association or the association manager is: _____

Owners' association website address, if any: _____
The name, address and telephone number of the president of the owners' association or the association manager is: _____

Owners' association website address, if any: _____

(ii) Complete ONLY if New Construction or where the Residential Property and Owner's Association Disclosure Statement is NOT required: To the best of Seller's knowledge there ☑ is ☐ is not an owners' association which imposes various mandatory covenants, conditions and restrictions upon the Property. If there is an owners' association, Seller agrees to promptly complete an Owners' Association Disclosure and Addendum For Properties Exempt from Residential Property Disclosure Statement (Standard Form 2A12-T) at Seller's expense and to attach it as an addendum to any contract for the sale of the Property.

(d) Termite Bond. To the best of Seller's knowledge there ☐ is ☑ is not a termite bond on the Property. If there is a termite bond, it ☐ is ☐ is not transferable. If transferable, the transfer cost is $ _____ , and the bonding company is: _____ .

(e) Ownership. Seller represents that Seller:
  ☑ has owned the Property for at least one year;
  ☐ has owned the Property for less than one year
  ☐ does not yet own the Property

If Seller does not yet own the Property, Seller agrees to promptly provide Firm information pertaining to Seller's acquisition of the Property, such as a copy of a sales contract or option for the Property, and to keep Firm timely informed of all developments pertaining to Seller's acquisition of the Property.

(f) Receipt of Sample Forms.
  ☐ Seller acknowledges receipt of a sample copy of an Offer to Purchase And Contract (form 2-T) or Offer to Purchase and Contract–New Construction (form 800-T), as may be appropriate for review purposes.
  ☐ Seller acknowledges receipt of a sample copy of a Professional Services Disclosure and Election form (form #760) for review purposes.

(g) Current Liens. Seller represents to the best of Seller's knowledge:
  (1) The Property ☑ is ☐ is not encumbered by a deed of trust or mortgage. *Complete any of the following where applicable:*
    (i) There is a first deed of trust or mortgage on the Property securing a loan held by:
      Lender Name: _Cardinal FINC_
      Approximate balance: $ _270,986 +/-_ Lender Phone#: _____
      Lender Address: _____
    (ii) There is a second deed of trust or mortgage on the Property securing a loan held by:
      Lender Name: _n/a_
      Approximate balance: $ _____ Lender Phone#: _____
      Lender Address: _____
    (iii) There is a deed of trust or mortgage on the Property securing an equity line of credit held by:
      Lender Name: _n/a_
      Approximate balance: $ _____ Lender Phone#: _____
      Lender Address: _____

  (2) Seller is current on all payments for the loans identified in numbered items (i), (ii) and (iii) above except as specified in (7) below.
  (3) Seller is not in default on any loan identified in numbered items (i), (ii) and (iii) above and has not received any notice(s) from the holder of any loan identified in numbered items (i), (ii) and (iii) above or from any other lien holder of any kind, regarding a default under the loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure except as specified in (7) below.
  (4) There are not any liens secured against the Property for Federal, State or local income taxes, unpaid real property taxes, unpaid condominium or homeowners' association fees, mechanics', laborers' or materialmen's liens, or other liens affecting the Property, and Seller has no knowledge of any matter that might result in a lien affecting the Property except as specified in (7) below.
  (5) There are not any judgments against Seller affecting the Property, and Seller has no knowledge of any matter that might result in a judgment that may potentially affect the Property except as specified in (7) below.
  (6) There are not any Uniform Commercial Code (UCC) fixture filings affecting the Property, and Seller has no knowledge of any matter that might result in a UCC fixture filing affecting the Property except as specified in (7) below.

STANDARD FORM 101
Revised 7/2016
© 7/2016

Individual agent initial _____ Seller initials _____

Produced with zipForm® by zipLogix 18070 Fifteen Mle Road, Fraser, Michigan 48026  www.zipLogix.com

Sellers

(7) Specify any information, including approximate balances, required by Seller representations (2) through (6) above (NOTE: Outstanding liens may affect Seller's net proceeds): _____ n/a

(h) **Bankruptcy, Seller** currently:
(1) ☐ is ☒ is not under bankruptcy protection under United States law.
(2) ☐ is ☒ is not contemplating seeking bankruptcy protection during the term of this Agreement.

(i) **Access.** Seller represents that the Property has legal access to a public right of way. If access is by private road/easement/other, Seller further represents that there ☐ is ☒ is not an agreement regarding the maintenance of such private road/easement/other means of access. If applicable, Seller agrees to promptly provide Firm information pertaining to any such agreement.

(j) **Lease(s).** To the best of Seller's knowledge, the Property ☐ is ☒ is not subject to any lease(s). If applicable:
(i) Seller agrees to promptly provide Firm a copy of any such lease(s) or a written statement of the terms of any oral lease(s);
(ii) If the Property is managed by someone other than Seller, the manager's name and contact information is as follows: _____

Seller authorizes any such manager to release and disclose to Firm any relevant information about any leases(s) and to cooperate with Firm in the sale of the Property.

(k) **FHA Appraisal.** To the best of Seller's knowledge, an FHA appraisal ☐ has ☒ has not been performed on the Property within four months prior to the Effective Date. If applicable, Seller agrees to promptly provide Firm a copy of any such appraisal if available.

(NOTE: Any such appraisal may or may not be binding on a buyer who intends to obtain FHA financing.)

(l) **Special Assessments.** To the best of Seller's knowledge, there are no Proposed or Confirmed Special Assessments (as defined in the sample contract form provided to Seller) regarding the Property except as follows (Insert "none" or the identification of such assessments, if any): _____ n/a

(m) **Manufactured (Mobile) Home.** Complete ONLY if there is a manufactured (mobile) home(s) on the Property that Seller intends to include as a part of the sale of the Property: VIN(s): _____ n/a _____ or ☐ VIN(s) unknown. Other description (year, model, etc.): _____ n/a

(n) **Fuel Tank/Fuel:** To the best of Seller's knowledge, there ☐ is ☒ is not a fuel tank(s) located on the Property. *If "yes" complete the following to the best of Seller's knowledge:*

Ownership of tank 1: ☐ owned ☐ leased. If leased, the name and contact information of tank lessor is:

| Location of tank 1: | ☐ above ground ☐ below ground | |
|---|---|---|
| Type of fuel: | ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: | |
| Refilling schedule: | ☐ auto-refill (*insert frequency*): | ☐ other (*describe*): |
| Name and contact information of fuel vendor: | | |

Ownership of tank 2: ☐ owned ☐ leased. If leased, the name and contact information of tank lessor is:

| Location of tank 2: | ☐ above ground ☐ below ground | |
|---|---|---|
| Type of fuel: | ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: | |
| Refilling schedule: | ☐ auto-refill (*insert frequency*): | ☐ other (*describe*): |
| Name and contact information of fuel vendor: | | |

If, during the term of this Agreement, Seller becomes aware that any of the representations set forth in this paragraph 12 are incorrect or no longer accurate, Seller shall promptly notify Firm and cooperate with Firm in taking appropriate corrective action.

13. **SELLER'S DUTIES.** Seller agrees to cooperate with Firm in the marketing and sale of the Property, including but not limited to:
(a) providing to Firm, in a timely manner, accurate information including but not limited to the following:
(i) Residential Property and Owner's Association Disclosure Statement (unless exempt);
(ii) Mineral and Oil and Gas Rights Mandatory Disclosure Statement (unless exempt); and
(iii) Lead-Based Paint or Lead-Based Paint Hazard Addendum with respect to any residential dwelling built prior to 1978.

(b) making the Property available for showing (including working, existing utilities) at reasonable times and upon reasonable notice;

(c) providing Firm as soon as reasonably possible after the execution of this Agreement copies of the following documents (where relevant) in the possession of Seller:
(1) restrictive covenants affecting the Property;
(2) bylaws, articles of incorporation, rules and regulations, and other governing documents of the owners' association and/or the subdivision;
(3) title insurance policies, attorney's opinions on title, surveys, covenants, deeds, notes and deeds of trust and easements relating to the Property.

Page 6 of 9

Individual agent initials _____ Seller initials _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Sellers

Seller authorizes (1) any attorney presently or previously representing Seller to release and disclose any title insurance policy in such attorney's file to Firm, (2) the Property's title insurer or its agent to release and disclose all materials in the Property's title insurer's (or title insurer's agent's) file to Firm, and (3) the owners' association manager (or other authorized representative) to release and disclose copies of all documents referenced in subparagraphs (c)(1) and (c)(2) above. Seller acknowledges and understands that Firm is under no obligation to acquire any of the information referenced in this subparagraph (c) or to verify the accuracy of any such information that may be provided to Firm,

(d) immediately referring to Firm all inquiries or offers it may receive regarding the Property; showing the Property only by appointment made by or through Firm; and conducting all negotiations through Firm;

(e) executing and delivering at settlement a GENERAL WARRANTY DEED conveying fee simple marketable title to the Property, including legal access to a public right of way, free of all encumbrances except ad valorem taxes for the current year, utility easements, rights-of-way, and unviolated restrictive covenants, if any, and those encumbrances that the buyer agrees to assume in the sales contract.

Seller represents that the Seller has the right to convey the Property, and that there are currently no circumstances that would prohibit the Seller from conveying fee simple marketable title as set forth in the preceding sentence, except as follows *(insert N/A if not applicable):* _____ N/a_____

(NOTE: If any sale of the Property may be a "short sale," consideration should be given to attaching NCAR form 104 as an addendum to this Agreement.)

(f) providing Firm, in a timely manner, any information necessary (including any information omitted under Paragraph 12) to enable Firm to prepare an estimate of Seller's net proceeds at settlement. Seller acknowledges and understands that any such estimate is an approximation only and that Seller should verify the accuracy of the calculations.

(g) if required by N.C.G.S. §44A-11.1, timely designating a Lien Agent, and providing Firm as soon as reasonably possible a copy of the appointment of Lien Agent.

14. **HOME INSPECTION:** Seller is advised to obtain a home inspection for the purpose of evaluating the condition of the Property in order to enhance its marketability and to help reduce concerns of prospective buyers. Seller ☐ agrees ☑ does not agree to obtain and pay for a home inspection by a licensed NC Home Inspector within _____ days after the execution of this agreement.

☐ Seller acknowledges receipt of a copy of *Questions and Answers on: Home Inspections* by the NC Real Estate Commission.

15. **PHOTOGRAPHS AND OTHER MATERIALS:** Firm is specifically authorized to use, for any purposes whatsoever, any and all photographs, drawings, video, advertising copy or other information obtained by or provided to Firm pursuant to this Agreement (including but not limited to any information concerning the price and terms of the sale of the Property, the description of the Property and the length of time the Property is on the market) ("Materials"), both before and after the sale or, in the event there is not a sale, after this Agreement has expired. If Seller provides any Materials to Firm ("Seller Materials"), Seller represents that Seller owns the Seller Materials or otherwise has the legal right to provide the Seller Materials to Firm, and Seller grants to Firm and any listing service in which Firm or its agents participate a non-exclusive, perpetual license to use the Seller Materials, including the rights to display, reproduce, distribute or make derivative works from the Seller Materials, Seller agrees to indemnify and hold Firm and its agents harmless for any and all claims resulting from use of the Seller Materials under the terms of this license.

16. **ADDITIONAL TERMS AND CONDITIONS.** The following additional terms and conditions shall also be a part of this Agreement: _____ none _____

17. **DUAL AGENCY.** Seller understands that the potential for dual agency will arise if a buyer who has an agency relationship with Firm becomes interested in viewing the Property. Firm may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Firm acts.

(a) Disclosure of Information. In the event Firm serves as a dual agent, Seller agrees that without permission from the party about whom the information pertains, Firm shall not disclose to the other party the following information:

    (1) that a party may agree to a price, terms, or any conditions of sale other than those offered;

    (2) the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and

    (3) any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute or rule.

(b) Firm's Role as Dual Agent. If Firm serves as agent for both Seller and a buyer in a transaction involving the Property, Firm shall make every reasonable effort to represent Seller and buyer in a balanced and fair manner. Firm shall also make every reasonable effort to encourage and effect communication and negotiation between Seller and buyer. Seller understands and acknowledges that:

    (1) Prior to the time dual agency occurs, Firm will act as Seller's exclusive agent;

Individual agent initials _____ Seller initials _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

(2) In its separate representation of Seller and buyer, Firm may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Firm;

(3) Firm is required by law to disclose to Seller and buyer any known or reasonably ascertainable material facts.

Seller agrees Firm shall not be liable to Seller for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

(c) Seller's Role. Should Firm become a dual agent, Seller understands and acknowledges that:

(1) Seller has the responsibility of making Seller's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Firm;

(2) Seller is fully aware of and understands the implications and consequences of Firm's dual agency role as expressed herein to provide balanced and fair representation of Seller and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

(3) Seller has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;

(4) Seller may seek independent legal counsel to assist Seller with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Firm become a dual agent, Seller waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Firm's role as a dual agent. Seller shall have a duty to protect Seller's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Seller wants included in said agreement.

(d) Authorization *(initial only ONE).*

_____ Seller authorizes the Firm to act as a dual agent, representing both the Seller and the buyer, subject to the terms and conditions set forth in Paragraph 17.

_____ Seller desires exclusive representation at all times during this agreement and does NOT authorize Firm to act in the capacity of dual agent. *If Seller does not authorize Firm to act as a dual agent, the remainder of this paragraph shall not apply.*

(e) Designated Agent Option *(initial only if applicable).*

_____ Seller hereby authorizes the Firm to designate an individual agent(s) to represent the Seller, to the exclusion of any other individual agents associated with the Firm. The individual designated agent(s) shall represent only the interests of the Seller to the extent permitted by law.

(NOTE: When dual agency arises, an individual agent shall not practice designated agency and shall remain a dual agent if the individual agent has actually received confidential information concerning a buyer client of the Firm in connection with the transaction or if designated agency is otherwise prohibited by law.)

18. MEDIATION. If a dispute arises out of or related to this Agreement or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation before resorting to arbitration, litigation, or some other dispute resolution procedure. If the need for mediation arises, the parties will choose a mutually acceptable mediator and will share the cost of mediation equally.

[THIS SPACE INTENTIONALLY LEFT BLANK]

STANDARD FORM 101
Revised 7/2016
© 7/2016

Individual agent initial _____ Seller initials _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Sellers

19. **ENTIRE AGREEMENT/CHANGES/TERMINATION.** This Agreement constitutes the entire agreement between Seller and Firm and there are no representations, inducements, or other provisions other than those expressed herein. This Agreement may be signed in multiple originals or counterparts, all of which together constitute one and the same instrument. All changes, additions, or deletions to this Agreement must be in writing and signed by both Seller and Firm. Seller acknowledges and understands that this Agreement constitutes a binding contract between Seller and Firm. Although Seller may at any time withdraw from the fiduciary relationship existing between Seller and Firm, the contract created by this Agreement may not be terminated by Seller or Firm prior to its Expiration Date without legally sufficient cause. Any such termination shall be by mutually-acceptable written agreement signed by both Seller and Firm. Seller and Firm each acknowledge receipt of a signed copy of this Agreement.

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. MAKES NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION.

Seller: _Jason M. Pool_ _____
        Print Name                       Signature            2-22-17
                                                                   Date

Contact Information: _____ ____ _____ ____ _N|C_
               Home                Work               Cell              Email

Mailing Address: _____

Seller: _Jennifer A. Pool_ _____
        Print Name                     Signature            2-22-17
Contact Information: _____ ____ _____ ____ _____
               Home                Work               Cell              Email

Mailing Address: _____

Entity Seller: _____
            (Name of LLC/Corporation/Partnership/Trust/etc.)

By: _____ Date: _____

Name: _____ Title: _____

Contact Information: _____ ____ _____ ____ _____
               Home                Work               Cell              Email

Mailing Address: _____

Firm: _Bestway Realty, Inc._ _____ Phone: _____
           Print Real Estate Firm Name

By: _____ _168806_ _2-22-17_
    Individual Agent Signature         Individual License Number        Date
    Harold E. Blackwelder

Office: **Bestway Realty, Inc.** _____

Address: **9700 Reedy Lane, Harrisburg, NC  28075** _____

Office Phone: **(704) 455-5808** _____ Fax: **(704) 200-2747** ____ Email: **HaroldBlackwelder@yahoo.com** ____

STANDARD FORM 101

DocuSign Envelope ID: CB3C4689-34A9-4CCF-A...-C45CC35B67B5



PLAINTIFF'S
EXHIBIT
tabbies
B

## OFFER TO PURCHASE AND CONTRACT
[Consult "Guidelines" (Form 2G) for guidance in completing this form]

For valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Buyer offers to purchase and Seller upon acceptance agrees to sell and convey the Property on the terms and conditions of this Offer To Purchase and Contract and any addendum or modification made in accordance with its terms (together the "Contract").

1.  **TERMS AND DEFINITIONS:** The terms listed below shall have the respective meaning given them as set forth adjacent to each term.

(a) "Seller": _____ Jason M Pool A/W Jennifer A. Pool

(b) "Buyer": _____ Amged Abdelgadir

(c) **"Property":** The Property shall include all that real estate described below together with all appurtenances thereto including the improvements located thereon and the fixtures and personal property listed in Paragraphs 2 and 3 below. NOTE: If the Property will include a manufactured (mobile) home(s), Buyer and Seller should consider including the Manufactured (Mobile) Home provision in the Additional Provisions Addendum (Standard Form 2A11-T) with this offer.

Street Address: _____ 9281 Perseverance Drive

City: _____ Harrisburg _____ Zip: _____ 28075

County: _____ Cabarrus _____ , North Carolina

NOTE: Governmental authority over taxes, zoning, school districts, utilities and mail delivery may differ from address shown.

Legal Description: (Complete ALL applicable)
Plat Reference: Lot/Unit _____ , Block/Section _____ , Subdivision/Condominium Brookedale Commons _____ , as shown on Plat Book/Slide _____ 11114 _____ at Page(s) _____ 53

The PIN/PID or other identification number of the Property is: _____ 5506-44-6570-000

Other description: LT 131 BROOKEDALE COMMONS PH 2 MP 3

Some or all of the Property may be described in Deed Book _____ 11114 _____ at Page _____ 53

(d) **"Purchase Price":**

| | | |
|---|---|---|
| $ | 325,000.00 | paid in U.S. Dollars upon the following terms: |
| $ | 250.00 | BY DUE DILIGENCE FEE made payable and delivered to Seller by the Effective Date. |
| $ | 3,000.00 | BY INITIAL EARNEST MONEY DEPOSIT made payable and delivered to Escrow Agent named in Paragraph 1(f) by ☐ cash ☒ personal check ☐ official bank check ☐ wire transfer, ☐ electronic transfer, EITHER ☐ with this offer OR ☐ within five (5) days of the Effective Date of this Contract. |
| $ | | BY (ADDITIONAL) EARNEST MONEY DEPOSIT made payable and delivered to Escrow Agent named in Paragraph 1(f) by cash or immediately available funds such as official bank check, wire transfer or electronic transfer no later than _____ , *TIME BEING OF THE ESSENCE* with regard to to said date. |
| $ | | BY ASSUMPTION of the unpaid principal balance and all obligations of Seller on the existing loan(s) secured by a deed of trust on the Property in accordance with the attached Loan Assumption Addendum (Standard Form 2A6-T). |
| $ | | BY SELLER FINANCING in accordance with the attached Seller Financing Addendum (Standard Form 2A5-T). |
| $ | | BY BUILDING DEPOSIT in accordance with the attached New Construction Addendum (Standard Form 2A3-T). |
| $ | 321,750.00 | BALANCE of the Purchase Price in cash at Settlement (some or all of which may be paid with the proceeds of a new loan). |

Should Buyer fail to deliver either the Due Diligence Fee or any Initial Earnest Money Deposit by their due dates, or should any check or other funds paid by Buyer be dishonored, for any reason, by the institution upon which the payment is drawn, Buyer shall

Page 1 of 13

This form jointly approved by:
North Carolina Bar Association
North Carolina Association of REALTORS®, Inc.

Buyer initials _____ AA          Seller initials _____

STANDARD FORM 2-T
Revised 7/2016
© 7/2016

Elline Realty Inc. 301 McCullough Drive, suite 400 Charlotte, NC 28262
Sara Blaccount          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Phone: (704)319-3745          Fax: 1866-205-1678          Amged Abdelgad

DocuSign Envelope ID: CB3C4689-34A9-4CCF-A5...45CC35B67B5

have one (1) banking day after written notice to deliver cash or immediately available funds to the payee. In the event Buyer does not timely deliver cash or immediately available funds, Seller shall have the right to terminate this Contract upon written notice to Buyer.

(e) **"Earnest Money Deposit"**: The Initial Earnest Money Deposit, the Additional Earnest Money Deposit and any other earnest monies paid or required to be paid in connection with this transaction, collectively the "Earnest Money Deposit", shall be deposited and held in escrow by Escrow Agent until Closing, at which time it will be credited to Buyer, or until this Contract is otherwise terminated. In the event; (1) this offer is not accepted; or (2) a condition of any resulting contract is not satisfied, then the Earnest Money Deposit shall be refunded to Buyer. In the event of breach of this Contract by Seller, the Earnest Money Deposit shall be refunded to Buyer upon Buyer's request, but such return shall not affect any other remedies available to Buyer for such breach. In the event of breach of this Contract by Buyer, the Earnest Money Deposit shall be paid to Seller as liquidated damages and as Seller's sole and exclusive remedy for such breach, but without limiting Seller's rights under Paragraphs 4(d) and 4(e) for damage to the Property or Seller's right to retain the Due Diligence Fee. It is acknowledged by the parties that payment of the Earnest Money Deposit to Seller in the event of a breach of this Contract by Buyer is compensatory and not punitive, such amount being a reasonable estimation of the actual loss that Seller would incur as a result of such breach. The payment of the Earnest Money Deposit to Seller shall not constitute a penalty or forfeiture but actual compensation for Seller's anticipated loss, both parties acknowledging the difficulty determining Seller's actual damages for such breach. If legal proceedings are brought by Buyer or Seller against the other to recover the Earnest Money Deposit, the prevailing party in the proceeding shall be entitled to recover from the non-prevailing party reasonable attorney fees and court costs incurred in connection with the proceeding.

(f) **"Escrow Agent"** (insert name): ___COSTNER LAW OFFICE, PLLC___

NOTE: In the event of a dispute between Seller and Buyer over the disposition of the Earnest Money Deposit held in escrow, a licensed real estate broker ("Broker") is required by state law (and Escrow Agent, if not a Broker, hereby agrees) to retain the Earnest Money Deposit in the Escrow Agent's trust or escrow account until Escrow Agent has obtained a written release from the parties consenting to its disposition or until disbursement is ordered by a court of competent jurisdiction. Alternatively, if a Broker or an attorney licensed to practice law in North Carolina ("Attorney") is holding the Earnest Money Deposit, the Broker or Attorney may deposit the disputed monies with the appropriate clerk of court in accordance with the provisions of N.C.G.S. §93A-12.

THE PARTIES AGREE THAT A REAL ESTATE BROKERAGE FIRM ACTING AS ESCROW AGENT MAY PLACE THE EARNEST MONEY DEPOSIT IN AN INTEREST BEARING TRUST ACCOUNT AND THAT ANY INTEREST EARNED THEREON SHALL BE DISBURSED TO THE ESCROW AGENT MONTHLY IN CONSIDERATION OF THE EXPENSES INCURRED BY MAINTAINING SUCH ACCOUNT AND RECORDS ASSOCIATED THEREWITH.

(g) **"Effective Date"**: The date that: (1) the last one of Buyer and Seller has signed or initialed this offer or the final counteroffer, if any, and (2) such signing or initialing is communicated to the party making the offer or counteroffer, as the case may be. The parties acknowledge and agree that the initials lines at the bottom of each page of this Contract are merely evidence of their having reviewed the terms of each page, and that the complete execution of such initials lines shall not be a condition of the effectiveness of this Agreement.

(h) **"Due Diligence"**: Buyer's opportunity during the Due Diligence Period to investigate the Property and the transaction contemplated by this Contract, including but not necessarily limited to the matters described in Paragraph 4 below, to decide whether Buyer, in Buyer's sole discretion, will proceed with or terminate the transaction.

(i) **"Due Diligence Fee"**: A negotiated amount, if any, paid by Buyer to Seller with this Contract for Buyer's right to conduct Due Diligence during the Due Diligence Period. It shall be the property of Seller upon the Effective Date and shall be a credit to Buyer at Closing. The Due Diligence Fee shall be non-refundable except in the event of a material breach of this Contract by Seller, or if this Contract is terminated under Paragraph 8(n) or Paragraph 12, or as otherwise provided in any addendum hereto. Buyer and Seller each expressly waive any right that they may have to deny the right to conduct Due Diligence or to assert any defense as to the enforceability of this Contract based on the absence or alleged insufficiency of any Due Diligence Fee, it being the intent of the parties to create a legally binding contract for the purchase and sale of the Property without regard to the existence or amount of any Due Diligence Fee.

(j) **"Due Diligence Period"**: The period beginning on the Effective Date and extending through 5:00 p.m. on ___5/5/17___ *TIME BEING OF THE ESSENCE* with regard to said date.

(k) **"Settlement"**: The proper execution and delivery to the closing attorney of all documents necessary to complete the transaction contemplated by this Contract, including the deed, settlement statement, deed of trust and other loan or conveyance documents, and the closing attorney's receipt of all funds necessary to complete such transaction.

(l) **"Settlement Date"**: The parties agree that Settlement will take place on ___5/15/17___ (the "Settlement Date"), unless otherwise agreed in writing, at a time and place designated by Buyer.

Page 2 of 13

DocuSign Envelope ID: CB3C4689-34A9-4CCF-A⸱⸱⸱⸱⸱C45CC35B67B5

(m) "Closing": The completion of the legal process which results in the transfer of title to the Property from Seller to Buyer, which includes the following steps: (1) the Settlement (defined above); (2) the completion of a satisfactory title update to the Property following the Settlement; (3) the closing attorney's receipt of authorization to disburse all necessary funds; and (4) recordation in the appropriate county registry of the deed(s) and deed(s) of trust, if any, which shall take place as soon as reasonably possible for the closing attorney after Settlement. Upon Closing, the proceeds of sale shall be disbursed by the closing attorney in accordance with the settlement statement and the provisions of Chapter 45A of the North Carolina General Statutes. If the title update should reveal unexpected liens, encumbrances or other title defects, or if the closing attorney is not authorized to disburse all necessary funds, then the Closing shall be suspended and the Settlement deemed delayed under Paragraph 13 (Delay in Settlement/Closing).

WARNING: The North Carolina State Bar has determined that the performance of most acts and services required for a closing constitutes the practice of law and must be performed only by an attorney licensed to practice law in North Carolina. State law prohibits unlicensed individuals or firms from rendering legal services or advice. Although non-attorney settlement agents may perform limited services in connection with a closing, they may not perform all the acts and services required to complete a closing. A closing involves significant legal issues that should be handled by an attorney. Accordingly it is the position of the North Carolina Bar Association and the North Carolina Association of REALTORS® that all buyers should hire an attorney licensed in North Carolina to perform a closing.

(n) "Special Assessments": A charge against the Property by a governmental authority in addition to ad valorem taxes and recurring governmental service fees levied with such taxes, or by an owners' association in addition to any regular assessment (dues), either of which may be a lien against the Property. A Special Assessment may be either proposed or confirmed.

"Proposed Special Assessment": A Special Assessment that is under formal consideration but which has not been approved prior to Settlement.

"Confirmed Special Assessment": A Special Assessment that has been approved prior to Settlement whether or not it is fully payable at time of Settlement.

## 2. FIXTURES AND EXCLUSIONS.

(a) Items Leased or Not Owned: Any item which is leased or not owned by Seller, such as fuel tanks, antennas, satellite dishes and receivers, appliances, and alarm and security systems must be identified here and shall not convey: N/A

(b) Specified Items: Unless identified in subparagraph (d) below the following items, if any, are deemed fixtures and are included in the Purchase Price free of liens: range/stove/oven, any built-in appliances, light fixtures, ceiling fans, attached floor coverings, blinds, shades, drapery rods and curtain rods, brackets and all related hardware, window and door screens, storm windows, combination doors, awnings, antennas, satellite dishes and receivers, mounting brackets for televisions and for speakers and all related hardware, burglar/fire/smoke/carbon monoxide alarms and security systems, pool, hot tub, spa and all related equipment, solar energy systems, attached fireplace screens, gas logs, fireplace inserts, electric garage door openers with controls, outdoor plants and trees (other than in movable containers), basketball goals, storage sheds, mailboxes, all bathroom wall mirrors and all attached wall and/or door mirrors, fuel tank(s) whether attached or buried and including any contents that have not been used, removed or resold to the fuel provider as of Settlement*, landscape and/or foundation lighting, invisible fencing including all related equipment, lawn irrigation systems and all related equipment, and water softener/conditioner and filter equipment.

(c) Other Fixtures/Unspecified Items: Unless identified in subparagraph (d) below, any other item legally considered a fixture is included in the Purchase Price free of liens.

(d) Other Items That Do Not Convey: The following items shall not convey (*identify those items to be excluded under* subparagraphs (b) and (c)): N/A

Seller shall repair any damage caused by removal of any items excepted above.

*NOTE: Seller's use, removal or resale of fuel in any fuel tank is subject to Seller's obligation under Paragraph 8(c) to provide working, existing utilities through the earlier of Closing or possession by Buyer.

3. PERSONAL PROPERTY: The following personal property shall be transferred to Buyer at no value at Closing: REFRIGERATOR AT TIME OF SHOWING

Page 3 of 13

Buyer initials __ [ll] __ Seller initials __ SS __

STANDARD FORM 2-T
Revised 7/2016
© 7/2016

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Amged Abdelgad

DocuSign Envelope ID: CB3C4689-34A9-4CCF-A5...45CC35B67B5

(NOTE: Buyer is advised to consult with Buyer's lender to assure that the Personal Property items listed above can be included in this Contract.)

## 4. BUYER'S DUE DILIGENCE PROCESS:

(a) Loan: During the Due Diligence Period, Buyer, at Buyer's expense, shall be entitled to pursue qualification for and approval of the Loan if any.

NOTE: Buyer is advised to consult with Buyer's lender prior to signing this offer to assure that the Due Diligence Period allows sufficient time for the appraisal to be completed and for Buyer's lender to provide Buyer sufficient information to decide whether to proceed with or terminate the transaction since the Loan is not a condition of the Contract.

(b) Property Investigation: During the Due Diligence Period, Buyer or Buyer's agents or representatives, at Buyer's expense, shall be entitled to conduct all desired tests, surveys, appraisals, investigations, examinations and inspections of the Property as Buyer deems appropriate, including but NOT limited to the following:

(i) Inspections: Inspections to determine the condition of any improvements on the Property, the presence of unusual drainage conditions or evidence of excessive moisture adversely affecting any improvements on the Property, the presence of asbestos or existing environmental contamination, evidence of wood-destroying insects or damage therefrom, and the presence and level of radon gas on the Property.

(ii) Review of Documents: Review of the Declaration of Restrictive Covenants, Bylaws, Articles of Incorporation, Rules and Regulations, and other governing documents of any applicable owners' association and/or subdivision. If the Property is subject to regulation by an owners' association, it is recommended that Buyer review the completed Residential Property and Owners' Association Disclosure Statement provided by Seller prior to signing this offer. It is also recommended that the Buyer determine if the owners' association or its management company charges fees for providing information required by Buyer's lender or confirming restrictive covenant compliance.

(iii) Insurance: Investigation of the availability and cost of insurance for the Property.

(iv) Appraisals: An appraisal of the Property.

(v) Survey: A survey to determine whether the property is suitable for Buyer's intended use and the location of easements, setbacks, property boundaries and other issues which may or may not constitute title defects.

(vi) Zoning and Governmental Regulation: Investigation of current or proposed zoning or other governmental regulation that may affect Buyer's intended use of the Property, adjacent land uses, planned or proposed road construction, and school attendance zones.

(vii) Flood Hazard: Investigation of potential flood hazards on the Property, and/or any requirement to purchase flood insurance in order to obtain the Loan.

(viii) Utilities and Access: Availability, quality, and obligations for maintenance of utilities including water, sewer, electric, gas, communication services, stormwater management, and means of access to the Property and amenities.

(ix) Streets/Roads: Investigation of the status of the street/road upon which the Property fronts as well as any other street/road used to access the Property, including: (1) whether any street(s)/road(s) are public or private, (2) whether any street(s)/road(s) designated as public are accepted for maintenance by the State of NC or any municipality, or (3) if private or not accepted for public maintenance, the consequences and responsibility for maintenance and the existence, terms and funding of any maintenance agreements.

(x) Fuel Tank: Inspections to determine the existence, type and ownership of any fuel tank located on the Property.

(NOTE: Buyer is advised to consult with the owner of any leased fuel tank regarding the terms under which Buyer may lease the tank and obtain fuel.)

(c) Repair/Improvement Negotiations/Agreement: Buyer acknowledges and understands that unless the parties agree otherwise, THE PROPERTY IS BEING SOLD IN ITS CURRENT CONDITION. Buyer and Seller acknowledge and understand that they may, but are not required to, engage in negotiations for repairs/improvements to the Property. Buyer is advised to make any repair/improvement requests in sufficient time to allow repair/improvement negotiations to be concluded prior to the expiration of the Due Diligence Period. Any agreement that the parties may reach with respect to repairs/improvements shall be considered an obligation of the parties and is an addition to this Contract and as such, must be in writing and signed by the parties in accordance with Paragraph 20.

(NOTE: See Paragraph 8(c), Access to Property/Walk-Through Inspection, and Paragraph 8(m), Negotiated Repairs/Improvements.)

(d) Buyer's Obligation to Repair Damage: Buyer shall, at Buyer's expense, promptly repair any damage to the Property resulting from any activities of Buyer and Buyer's agents and contractors, but Buyer shall not be responsible for any damage caused by accepted practices either approved by the N.C. Home Inspector Licensure Board or applicable to any other N.C. licensed professional performing reasonable appraisals, tests, surveys, examinations and inspections of the Property. This repair obligation shall survive any termination of this Contract.

Page 4 of 13

Buyer initials _____ Seller initials _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com     Amged Abdelgad

DocuSign Envelope ID: CB3C4689-34A9-4CCF-A...45CC35B67B5

(e) **Indemnity:** Buyer will indemnify and hold Seller harmless from all loss, damage, claims, suits or costs, which shall arise out of any contract, agreement, or injury to any person or property as a result of any activities of Buyer and Buyer's agents and contractors relating to the Property except for any loss, damage, claim, suit or cost arising out of pre-existing conditions of the Property and/or out of Seller's negligence or willful acts or omissions. This indemnity shall survive this Contract and any termination hereof.

(f) **Buyer's Right to Terminate:** Buyer shall have the right to terminate this Contract for any reason or no reason, by delivering to Seller written notice of termination (the "Termination Notice") during the Due Diligence Period (or any agreed-upon written extension of the Due Diligence Period), *TIME BEING OF THE ESSENCE.* If Buyer timely delivers the Termination Notice, this Contract shall be terminated and the Earnest Money Deposit shall be refunded to Buyer.

**WARNING:** If Buyer is not satisfied with the results or progress of Buyer's Due Diligence, Buyer should terminate this Contract, *prior to the expiration of the Due Diligence Period,* unless Buyer can obtain a written extension from Seller. SELLER IS NOT

OBLIGATED TO GRANT AN EXTENSION. Although Buyer may continue to investigate the Property following the expiration of the Due Diligence Period, Buyer's failure to deliver a Termination Notice to Seller prior to the expiration of the Due Diligence Period shall constitute a waiver by Buyer of any right to terminate this Contract based on any matter relating to Buyer's Due Diligence. Provided however, following the Due Diligence Period, Buyer may still exercise a right to terminate if Seller fails to materially comply with any of Seller's obligations under Paragraph 8 of this Contract or for any other reason permitted under the terms of this Contract or North Carolina law.

(g) CLOSING SHALL CONSTITUTE ACCEPTANCE OF THE PROPERTY IN ITS THEN EXISTING CONDITION UNLESS PROVISION IS OTHERWISE MADE IN WRITING.

5. **BUYER REPRESENTATIONS:**
(a) **Loan:** Buyer ☐ does ☒ does not have to obtain a new loan in order to purchase the Property. If Buyer is obtaining a new loan, Buyer intends to obtain a loan as follows: ☐ FHA ☐ VA (attach FHA/VA Financing Addendum) ☐ Conventional ☐ Other: _____ loan at a ☐ Fixed Rate ☐ Adjustable Rate in the principal amount of _____ plus any financed VA Funding Fee or FHA MIP for a term of _____ year(s), at an initial interest rate not to exceed _____ % per annum (the "Loan").

**NOTE:** Buyer's obligations under this Contract are not conditioned upon obtaining or closing any loan. If Buyer represents that Buyer does not have to obtain a new loan in order to purchase the Property, Seller is advised, prior to signing this offer, to obtain documentation from Buyer which demonstrates that Buyer will be able to close on the Property without the necessity of obtaining a new loan.

(b) **Other Property:** Buyer ☐ does ☒ does not have to sell or lease other real property in order to qualify for a new loan or to complete purchase.

(NOTE: This Contract is not conditioned upon the sale of Buyer's property unless a contingent sale addendum such as Standard Form 2A2-T is made a part of this Contract.)

(c) **Performance of Buyer's Financial Obligations:** To the best of Buyer's knowledge, there are no other circumstances or conditions existing as of the date of this offer that would prohibit Buyer from performing Buyer's financial obligations in accordance with this Contract, except as may be specifically set forth herein.

(d) **Residential Property and Owners' Association Property Disclosure Statement** *(check only one):*
☒ Buyer has received a signed copy of the N.C. Residential Property and Owners' Association Disclosure Statement prior to the signing of this offer.
☐ Buyer has NOT received a signed copy of the N.C. Residential Property and Owners' Association Disclosure Statement prior to the signing of this offer and shall have the right to terminate or withdraw this Contract without penalty (including a refund of any Due Diligence Fee) prior to WHICHEVER OF THE FOLLOWING EVENTS OCCURS FIRST: (1) the end of the third calendar day following receipt of the Disclosure Statement; (2) the end of the third calendar day following the Effective Date; or (3) Settlement or occupancy by Buyer in the case of a sale or exchange.
☐ Exempt from N.C. Residential Property and Owners' Association Disclosure Statement because (SEE GUIDELINES): _____

Page 5 of 13

Buyer initials _____ Seller initials _____

STANDARD FORM 2-T
Revised 7/2016
© 7/2016

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Amged Abdelgad

(e) **Mineral and Oil and Gas Rights Mandatory Disclosure Statement** *(check only one)*:

☒ Buyer has received a signed copy of the N.C. Mineral and Oil and Gas Rights Mandatory Disclosure Statement prior to the signing of this offer.

☐ Buyer has NOT received a signed copy of the N.C. Mineral and Oil and Gas Rights Mandatory Disclosure Statement prior to the signing of this offer and shall have the right to terminate or withdraw this Contract without penalty (including a refund of any Due Diligence Fee) prior to WHICHEVER OF THE FOLLOWING EVENTS OCCURS FIRST: (1) the end of the third calendar day following receipt of the Disclosure Statement; (2) the end of the third calendar day following the Effective Date; or (3) Settlement or occupancy by Buyer in the case of a sale or exchange.

☐ Exempt from N.C. Mineral and Oil and Gas Rights Mandatory Disclosure Statement because (SEE GUIDELINES): _____

Buyer's receipt of a Mineral and Oil and Gas Rights Mandatory Disclosure Statement does not modify or limit the obligations of Seller under Paragraph 8(g) of this Contract and shall not constitute the assumption or approval by Buyer of any severance of mineral and/or oil and gas rights, except as may be assumed or specifically approved by Buyer in writing.

(NOTE: The parties are advised to consult with a NC attorney prior to signing this Contract if severance of mineral and/or oil and gas rights has occurred or is intended.)

6. **BUYER OBLIGATIONS:**

(a) Responsibility for Proposed Special Assessments: Buyer shall take title subject to all Proposed Special Assessments.

(b) Responsibility for Certain Costs: Buyer shall be responsible for all costs with respect to:

(i) any loan obtained by Buyer, including charges by an owners association and/or management company as agent of an owners' association for providing information required by Buyer's lender;

(ii) charges required by an owners' association declaration to be paid by Buyer for Buyer's future use and enjoyment of the Property, including, without limitation, working capital contributions, membership fees, or charges for Buyer's use of the common elements and/or services provided to Buyer, such as "move-in fees";

(iii) determining restrictive covenant compliance;

(iv) appraisal,

(v) title search,

(vi) title insurance,

(vii) recording the deed, and

(viii) preparation and recording of all instruments required to secure the balance of the Purchase Price unpaid at Settlement.

(c) Authorization to Disclose Information: Buyer authorizes the Buyer's lender(s), the parties' real estate agent(s) and closing attorney: (1) to provide this Contract to any appraiser employed by Buyer or by Buyer's lender(s); and (2) to release and disclose any buyer's closing disclosure, settlement statement and/or disbursement summary, or any information therein, to the parties to this transaction, their real estate agent(s) and Buyer's lender(s).

7. **SELLER REPRESENTATIONS:**

(a) Ownership: Seller represents that Seller:

☒ has owned the Property for at least one year.

☐ has owned the Property for less than one year.

☐ does not yet own the Property.

(b) Lead-Based Paint *(check if applicable)*:

☐ The Property is residential and was built prior to 1978 (Attach Lead-Based Paint or Lead-Based Paint Hazards Disclosure Addendum {Standard Form 2A9-T}).

(c) Assessments: To the best of Seller's knowledge there are no Proposed Special Assessments except as follows (Insert "None" or the identification of such assessments, if any): **NONE** _____

Seller warrants that there are no Confirmed Special Assessments except as follows (Insert "None" or the identification of such assessments, if any): **NONE** _____

(d) Owners' Association(s) and Dues: Seller authorizes and directs any owners' association, any management company of the owners' association, any insurance company and any attorney who has previously represented the Seller to release to Buyer, Buyer's agents, representative, closing attorney or lender true and accurate copies of the following items affecting the Property, including any amendments:

Page 6 of 13

Buyer initials ___[*lll*]___   Seller initials ___[TMP]___

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Amged Abdelgad

DocuSign Envelope ID: CB3C4689-34A9-4CCF-A5₇......A8CC35B67B5

- Seller's statement of account
- master insurance policy showing the coverage provided and the deductible amount
- Declaration and Restrictive Covenants
- Rules and Regulations
- Articles of Incorporation
- Bylaws of the owners' association
- current financial statement and budget of the owners' association
- parking restrictions and information
- architectural guidelines

☒ (specify name of association): _____ **Braesael Management Company** _____ whose regular
assessments ("dues") are $**150.00** _____ per __**quarter**__ . The name, address and telephone number of the president
of the owners' association or the association manager is: **704-847-3507**

Owners' association website address, if any: _____

☐ (specify name of association): _____ whose regular
assessments ("dues") are $_____ per _____ . The name, address and telephone number of the president
of the owners' association or the association manager is: _____

Owners' association website address, if any: _____

## 8.  SELLER OBLIGATIONS:

(a) **Evidence of Title and Payoff Statement(s):** Seller agrees to use best efforts to deliver to Buyer as soon as reasonably possible after the Effective Date, copies of all title information in possession of or available to Seller, including but not limited to: title insurance policies, attorney's opinions on title, surveys, covenants, deeds, notes and deeds of trust, leases, and easements relating to the Property. Seller shall provide to the closing attorney all information needed to obtain a written payoff statement from any lender(s) regarding any security interest in the Property as soon as reasonably possible after the Effective Date, and Seller designates the closing attorney as Seller's agent with express authority to request and obtain on Seller's behalf payoff statements and/or short-pay statements from any such lender(s).

(b) **Authorization to Disclose Information:** Seller authorizes: (1) any attorney presently or previously representing Seller to release and disclose any title insurance policy in such attorney's file to Buyer and both Buyer's and Seller's agents and attorneys; (2) the Property's title insurer or its agent to release and disclose all materials in the Property's title insurer's (or title insurer's agent's) file to Buyer and both Buyer's and Seller's agents and attorneys and (3) the closing attorney to release and disclose any seller's closing disclosure, settlement statement and/or disbursement summary, or any information therein, to the parties to this transaction, their real estate agent(s) and Buyer's lender(s).

(c) **Access to Property/Walk-Through Inspection:** Seller shall provide reasonable access to the Property (including working, existing utilities) through the earlier of Closing or possession by Buyer, including, but not limited to, allowing Buyer an opportunity to conduct a final walk-through inspection of the Property.

(d) **Removal of Seller's Property:** Seller shall remove, by the date possession is made available to Buyer, all personal property which is not a part of the purchase and all garbage and debris from the Property.

(e) **Affidavit and Indemnification Agreement:** Seller shall furnish at Settlement an affidavit(s) and indemnification agreement(s) in form satisfactory to Buyer and Buyer's title insurer, if any, executed by Seller and any person or entity who has performed or furnished labor, services, materials or rental equipment to the Property within 120 days prior to the date of Settlement and who may be entitled to claim a lien against the Property as described in N.C.G.S. §44A-8 verifying that each such person or entity has been paid in full and agreeing to indemnify Buyer, Buyer's lender(s) and Buyer's title insurer against all loss from any cause or claim arising therefrom.

(f) **Designation of Lien Agent, Payment and Satisfaction of Liens:** If required by N.C.G.S. §44A-11.1, Seller shall have designated a Lien Agent, and Seller shall deliver to Buyer as soon as reasonably possible a copy of the appointment of Lien Agent. All deeds of trust, deferred ad valorem taxes, liens and other charges against the Property, not assumed by Buyer, must be paid and satisfied by Seller prior to or at Settlement such that cancellation may be promptly obtained following Closing. Seller shall remain obligated to obtain any such cancellations following Closing.

Page 7 of 13

Buyer initials ⟨̰ᴰᴮ *dd* _____   Seller initials ⟍MP ⟨⟩⟨⟩⟨⟩

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

(g) **Good Title, Legal Access:** Seller shall execute and deliver a GENERAL WARRANTY DEED for the Property in recordable form no later than Settlement, which shall convey fee simple marketable and insurable title, without exception for mechanics' liens, and free of any other liens, encumbrances or defects, including those which would be revealed by a current and accurate survey of the Property, except: ad valorem taxes for the current year (prorated through the date of Settlement); utility easements and unviolated covenants, conditions or restrictions that do not materially affect the value of the Property; and such other liens, encumbrances or defects as may be assumed or specifically approved by Buyer in writing. The Property must have legal access to a public right of way.

(NOTE: Buyer's failure to terminate this Contract prior to the expiration of the Due Diligence Period as a result of any encumbrance or defect that is or would have been revealed by a title examination of the Property or a current and accurate survey shall not relieve Seller of any obligation under this subparagraph.)

(NOTE: If any sale of the Property may be a "short sale," consideration should be given to attaching a Short Sale Addendum (Standard Form 2A14-T) as an addendum to this Contract.)

(h) **Deed, Taxes and Fees:** Seller shall pay for preparation of a deed and all other documents necessary to perform Seller's obligations under this Contract, and for state and county excise taxes, and any deferred, discounted or rollback taxes, and local conveyance fees required by law. The deed is to be made to: **Amqed Abdelqadir**

(i) **Agreement to Pay Buyer Expenses:** Seller shall pay at Settlement $ **2,000.00** toward any of Buyer's expenses associated with the purchase of the Property, including any FHA/VA lender and inspection costs that Buyer is not permitted to pay, less any portion disapproved by Buyer's lender.

NOTE: Examples of Buyer's expenses associated with the purchase of the Property include, but are not limited to, discount points, loan origination fees, appraisal fees, attorney's fees, inspection fees, and "pre-paids" (taxes, insurance, owners' association dues, etc.).

(j) **Owners' Association Fees/Charges:** Seller shall pay: (i) any fees required for confirming Seller's account payment information on owners' association dues or assessments for payment or proration; (ii) any fees imposed by an owners' association and/or a management company as agent of the owners' association in connection with the transaction contemplated by this Contract other than those fees required to be paid by Buyer under paragraph 6(b) above; and (iii) fees incurred by Seller in completing the Residential Property and Owners' Association Disclosure Statement, and resale or other certificates related to a proposed sale of the Property.

(k) **Payment of Confirmed Special Assessments:** Seller shall pay all Confirmed Special Assessments, if any, provided that the amount thereof can be reasonably determined or estimated.

(l) **Late Listing Penalties:** All property tax late listing penalties, if any, shall be paid by Seller.

(m) **Negotiated Repairs/Improvements:** Negotiated repairs/improvements shall be made in a good and workmanlike manner and Buyer shall have the right to verify same prior to Settlement.

(n) **Seller's Failure to Comply or Breach:** If Seller fails to materially comply with any of Seller's obligations under this Paragraph 8 or Seller materially breaches this Contract, and Buyer elects to terminate this Contract as a result of such failure or breach, then the Earnest Money Deposit and the Due Diligence Fee shall be refunded to Buyer and Seller shall reimburse to Buyer the reasonable costs actually incurred by Buyer in connection with Buyer's Due Diligence without affecting any other remedies. If legal proceedings are brought by Buyer against Seller to recover the Earnest Money Deposit, the Due Diligence Fee and/or the reasonable costs actually incurred by Buyer in connection with Buyer's Due Diligence, the prevailing party in the proceeding shall be entitled to recover from the non-prevailing party reasonable attorney fees and court costs incurred in connection with the proceeding.

9. **PRORATIONS AND ADJUSTMENTS:** Unless otherwise provided, the following items shall be prorated through the date of Settlement and either adjusted between the parties or paid at Settlement:

(a) **Taxes on Real Property:** Ad valorem taxes and recurring governmental service fees levied with such taxes on real property shall be prorated on a calendar year basis;

(b) **Taxes on Personal Property:** Ad valorem taxes on personal property for the entire year shall be paid by Seller unless the personal property is conveyed to Buyer, in which case, the personal property taxes shall be prorated on a calendar year basis;

(c) **Rents:** Rents, if any, for the Property;

(d) **Dues:** Owners' association regular assessments (dues) and other like charges.

Page 8 of 13

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Amged Abdelgad

10. **HOME WARRANTY:** Select one of the following:

&#9642; No home warranty is to be provided by Seller.

☐ Buyer may obtain a one-year home warranty at a cost not to exceed $ _____ and Seller agrees to pay for it at Settlement.

☐ Seller has obtained and will provide a one-year home warranty from _____ at a cost of $ _____ and will pay for it at Settlement.

(NOTE: Home warranties typically have limitations on and conditions to coverage. Refer specific questions to the home warranty company.)

11. **CONDITION OF PROPERTY AT CLOSING:** Buyer's obligation to complete the transaction contemplated by this Contract shall be contingent upon the Property being in substantially the same or better condition at Closing as on the date of this offer, reasonable wear and tear excepted.

12. **RISK OF LOSS:** The risk of loss or damage by fire or other casualty prior to Closing shall be upon Seller. If the improvements on the Property are destroyed or materially damaged prior to Closing, Buyer may terminate this Contract by written notice delivered to Seller or Seller's agent and the Earnest Money Deposit and any Due Diligence Fee shall be refunded to Buyer. In the event Buyer does NOT elect to terminate this Contract, Buyer shall be entitled to receive, in addition to the Property, any of Seller's insurance proceeds payable on account of the damage or destruction applicable to the Property being purchased. Seller is advised not to cancel existing insurance on the Property until after confirming recordation of the deed.

13. **DELAY IN SETTLEMENT/CLOSING:** Absent agreement to the contrary in this Contract or any subsequent modification thereto, if a party is unable to complete Settlement by the Settlement Date but intends to complete the transaction and is acting in good faith and with reasonable diligence to proceed to Settlement ("Delaying Party"), and if the other party is ready, willing and able to complete Settlement on the Settlement Date ("Non-Delaying Party") then the Delaying Party shall give as much notice as possible to the Non-Delaying Party and closing attorney and shall be entitled to a delay in Settlement. If the parties fail to complete Settlement and Closing within fourteen (14) days of the Settlement Date (including any amended Settlement Date agreed to in writing by the parties) or to otherwise extend the Settlement Date by written agreement, then the Delaying Party shall be in breach and the Non-Delaying Party may terminate this Contract and shall be entitled to enforce any remedies available to such party under this Contract for the breach.

14. **POSSESSION:** Possession, including all means of access to the Property (keys, codes including security codes, garage door openers, electronic devices, etc.), shall be delivered upon Closing as defined in Paragraph 1(m) unless otherwise provided below:

☐ A Buyer Possession Before Closing Agreement is attached (Standard Form 2A7-T)

☐ A Seller Possession After Closing Agreement is attached (Standard Form 2A8-T)

☐ Possession is subject to rights of tenant(s) (NOTE: Consider attaching Additional Provisions Addendum (Form 2A-11-T) or Vacation Rental Addendum (Form 2A13-T))

15. **ADDENDA:** CHECK ALL STANDARD ADDENDA THAT MAY BE A PART OF THIS CONTRACT, IF ANY, AND ATTACH HERETO. ITEMIZE ALL OTHER ADDENDA TO THIS CONTRACT, IF ANY, AND ATTACH HERETO.

☐ Additional Provisions Addendum (Form 2A11-T)
☐ Additional Signatures Addendum (Form 3-T)
☐ Back-Up Contract Addendum (Form 2A1-T)
☐ Contingent Sale Addendum (Form 2A2-T)
☐ FHA/VA Financing Addendum (Form 2A4-T)
☐ Lead-Based Paint Or Lead-Based Paint Hazard Addendum (Form 2A9-T)

☐ Loan Assumption Addendum (Form 2A6-T)
☐ New Construction Addendum (Form 2A3-T)
☐ Seller Financing Addendum (Form 2A5-T)
☐ Short Sale Addendum (Form 2A14-T)
☐ Vacation Rental Addendum (Form 2A13-T)

☐ Identify other attorney or party drafted addenda: _____

NOTE: UNDER NORTH CAROLINA LAW, REAL ESTATE BROKERS ARE NOT PERMITTED TO DRAFT ADDENDA TO THIS CONTRACT.

16. **ASSIGNMENTS:** This Contract may not be assigned without the written consent of all parties except in connection with a tax-deferred exchange, but if assigned by agreement, then this Contract shall be binding on the assignee and assignee's heirs and successors.

Page 9 of 13

Buyer initials _____ DS    Seller initials $\underline{JMR}$ $\underline{\text{AMP}}$

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Amged Abdelgad

17. **TAX-DEFERRED EXCHANGE:** In the event Buyer or Seller desires to effect a tax-deferred exchange in connection with the conveyance of the Property, Buyer and Seller agree to cooperate in effecting such exchange; provided, however, that the exchanging party shall be responsible for all additional costs associated with such exchange, and provided further, that a non-exchanging party shall not assume any additional liability with respect to such tax-deferred exchange. Buyer and Seller shall execute such additional documents, including assignment of this Contract in connection therewith, at no cost to the non-exchanging party, as shall be required to give effect to this provision.

18. **PARTIES:** This Contract shall be binding upon and shall inure to the benefit of Buyer and Seller and their respective heirs, successors and assigns. As used herein, words in the singular include the plural and the masculine includes the feminine and neuter genders, as appropriate.

19. **SURVIVAL:** If any provision herein contained which by its nature and effect is required to be observed, kept or performed after the Closing, it shall survive the Closing and remain binding upon and for the benefit of the parties hereto until fully observed, kept or performed.

20. **ENTIRE AGREEMENT:** This Contract contains the entire agreement of the parties and there are no representations, inducements or other provisions other than those expressed herein. All changes, additions or deletions hereto must be in writing and signed by all parties. Nothing contained herein shall alter any agreement between a REALTOR® or broker and Seller or Buyer as contained in any listing agreement, buyer agency agreement, or any other agency agreement between them.

21. **CONDUCT OF TRANSACTION:** The parties agree that any action between them relating to the transaction contemplated by this Contract may be conducted by electronic means, including the signing of this Contract by one or more of them and any notice or communication given in connection with this Contract. Any written notice or communication may be transmitted to any mailing address, e-mail address or fax number set forth in the "Notice Information" section below. Any notice or communication to be given to a party herein, and any fee, deposit or other payment to be delivered to a party herein, may be given to the party or to such party's agent. Seller and Buyer agree that the "Notice Information" and "Acknowledgment of Receipt of Monies" sections below shall not constitute a material part of this Contract, and that the addition or modification of any information therein shall not constitute a rejection of an offer or the creation of a counteroffer.

22. **EXECUTION:** This Contract may be signed in multiple originals or counterparts, all of which together constitute one and the same instrument.

23. **COMPUTATION OF DAYS/TIME OF DAY:** Unless otherwise provided, for purposes of this Contract, the term "days" shall mean consecutive calendar days, including Saturdays, Sundays, and holidays, whether federal, state, local or religious. For the purposes of calculating days, the count of "days" shall begin on the day following the day upon which any act or notice as provided in this Contract was required to be performed or made. Any reference to a date or time of day shall refer to the date and/or time of day in the State of North Carolina.

[THIS SPACE INTENTIONALLY LEFT BLANK]

Page 10 of 13

Buyer initials _[DS]_ _ɑɑ_ _____ Seller initials _SMP_

STANDARD FORM 2-T
Revised 7/2016
© 7/2016

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Amged Abdelgad

DocuSign Envelope ID: CB3C4689-34A9-4CCF-A5...C45CC35B67B5

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. AND THE NORTH CAROLINA BAR ASSOCIATION MAKE NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DO NOT UNDERSTAND THIS FORM OR FEEL THAT IT DOES NOT PROVIDE FOR YOUR LEGAL NEEDS, YOU SHOULD CONSULT A NORTH CAROLINA REAL ESTATE ATTORNEY BEFORE YOU SIGN IT.

This offer shall become a binding contract on the Effective Date. Unless specifically provided otherwise, Buyer's failure to timely deliver any fee, deposit or other payment provided for herein shall not prevent this offer from becoming a binding contract, provided that any such failure shall give Seller certain rights to terminate the contract as described herein or as otherwise permitted by law.

Date: ___4/13/2017___

Buyer ___Amged Abdelqadir___
*DocuSigned by:*
*Amged Abdelqadir*

Date: _____

Buyer _____

Entity Buyer:

_____
(Name of LLC/Corporation/Partnership/Trust/etc.)

By: _____

Name: _____

Title: _____

Date: _____

Date: ___4-13-17___

Seller ___Jason M Pool___
Date: ___4/13/17___

Seller _____

Entity Seller:

_____
(Name of LLC/Corporation/Partnership/Trust/etc.)

By: _____

Name: _____

Title: _____

Date: _____

[THIS SPACE INTENTIONALLY LEFT BLANK]

STANDARD FORM 2-T
Revised 7/2016
© 7/2016

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Amged Abdelgad

DocuSign Envelope ID: CB3C4689-34A9-4CCF-A5ᴹᴮ-C45CC35B67B5

## NOTICE INFORMATION

NOTE: INSERT THE ADDRESS AND/OR ELECTRONIC DELIVERY ADDRESS EACH PARTY AND AGENT APPROVES FOR THE RECEIPT OF ANY NOTICE CONTEMPLATED BY THIS CONTRACT. INSERT "N/A" FOR ANY WHICH ARE NOT APPROVED.

**BUYER NOTICE ADDRESS:**

Mailing Address: _____

Buyer Fax#: _____

Buyer E-mail: _____

**SELLING AGENT NOTICE ADDRESS:**

Firm Name: ETHICS REALTY INC.
Acting as☒ Buyer's Agent☐ Seller's (sub)Agent☐Dual Agent
Firm License #: C26209

Mailing Address: 301 McCullough Drive, suite 400.

Charlotte, NC 28262

Individual Selling Agent:: Sami Bianouni
☐ Acting as a Designated Dual Agent (check only if applicable)

Selling Agent License #: 258842

Selling Agent Phone#: (704) 519-8745

Selling Agent Fax#: (866) 205-1678

Selling Agent E-mail: Sami@EthicsRealty.com

**SELLER NOTICE ADDRESS:**

Mailing Address: _____

Seller Fax#: _____

Seller E-mail: _____

**LISTING AGENT NOTICE ADDRESS:**

Firm Name: BESTWAY REALTY, INC.
Acting as ☒ Seller's Agent ☐ Dual Agent
Firm License #: C-2891

Mailing Address: 9700 Reedy Ln

Harrisburg, NC 28075

Individual Listing Agent: Harold E. Blackwelder.
☐ Acting as a Designated Dual Agent (check only if applicable)

Listing Agent License #: 68806

Listing Agent Phone#: 704-201-6359

Listing Agent Fax#: n/a

Listing Agent E-mail: HaroldBlackwelder@yahoo.com

[THIS SPACE INTENTIONALLY LEFT BLANK]

STANDARD FORM 2-T
Revised 7/2016
© 7/2016
Amged Abdelgad

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

DocuSign Envelope ID: C53C4669-3AA9-4CCF-AB7B-C45CC35B67B8

## ACKNOWLEDGMENT OF RECEIPT OF MONIES

Seller: Jason M. Pool _____ ("Seller")

Buyer: Amjad Abdulqadir _____ ("Buyer")

Property Address: 8281 Heronsprance Drive, Harrisburg, 28075 _____ ("Property")

☐ **LISTING AGENT ACKNOWLEDGMENT OF RECEIPT OF DUE DILIGENCE FEE**

Paragraph 1(d) of the Offer to Purchase and Contract between Buyer and Seller for the sale of the Property provides for the payment to Seller of a Due Diligence Fee in the amount of $ _____, receipt of which Listing Agent hereby acknowledges.

Date: _____

Firm: _____

By: _____
     (Signature)

_____
     (Print name)

☐ **SELLER ACKNOWLEDGMENT OF RECEIPT OF DUE DILIGENCE FEE**

Paragraph 1(d) of the Offer to Purchase and Contract between Buyer and Seller for the sale of the Property provides for the payment to Seller of a Due Diligence Fee in the amount of $ 250.00, receipt of which Seller hereby acknowledges.

Date: 4/14/17

Seller: _____
     (Signature)
     Jason M. Pool.

Date: _____

Seller: _____
     (Signature)

☒ **ESCROW AGENT ACKNOWLEDGMENT OF RECEIPT OF INITIAL EARNEST MONEY DEPOSIT**

Paragraph 1(d) of the Offer to Purchase and Contract between Buyer and Seller for the sale of the Property provides for the payment to Escrow Agent of an Initial Earnest Money Deposit in the amount of $ 3000.00 , Escrow Agent, as identified in Paragraph 1(f) of the Offer to Purchase and Contract hereby acknowledges receipt of the Initial Earnest Money Deposit and agrees to hold and disburse the same in accordance with the terms of the Offer to Purchase and Contract.

Date: 4/14/17

Firm: COSTNER LAW OFFICE, PLLC

By: _____
     (Signature)
     Kristine Prendergast
     (Print name)

☐ **ESCROW AGENT ACKNOWLEDGMENT OF RECEIPT OF (ADDITIONAL) EARNEST MONEY DEPOSIT**

Paragraph 1(d) of the Offer to Purchase and Contract between Buyer and Seller for the sale of the Property provides for the payment to Escrow Agent of an (Additional) Earnest Money Deposit in the amount of $ _____. Escrow Agent, as identified in Paragraph 1(f) of the Offer to Purchase and Contract hereby acknowledges receipt of the (Additional) Earnest Money Deposit and agrees to hold and disburse the same in accordance with the terms of the Offer to Purchase and Contract.

Date: _____

Firm: COSTNER LAW OFFICE, PLLC

Time: _____ ☐ AM ☐ PM

By: _____
     (Signature)

_____
     (Print name)

STANDARD FORM 2-T
Revised 7/2016
© 7/2016

Angel Abdilgad

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

PLAINTIFF'S
EXHIBIT
C
exhibits



AHMED A. ABDELGADIR
RESHA TAWHEED
4024 JESSICA LEIGH LN APT 110
CHARLOTTE NC 28262-2565

Pay To The
Order Of: Jason & Jennifer Pool

Two hundred fifty Dollars

Bank of America

4/14/17

$ 250.00

9281 persimmon

⑆051000017⑆



## AGREEMENT TO AMEND CONTRACT

**WARNING: ALL PARTIES, INCLUDING ANY LENDER AND SETTLEMENT AGENT, MUST BE PROVIDED A COPY OF THIS AGREEMENT**

_____Amged Abdelgadir_____ , as Buyer, and

_____Jason M. Pool, Jennifer A. Pool_____ , as Seller,

have entered into a contract on the Offer to Purchase and Contract (form 2-T) or the Offer to Purchase and Contract - Vacant Lot/Land

(form 12-T) ("Contract") regarding the purchase and sale of the following property (insert property address): 9281 **Perseverance**

**Drive, Harrisburg, NC  28075**_____ ("Property").

Buyer and Seller hereby agree to amend the Contract as set forth below [check applicable box(es)]:

☐ **Purchase Price.** The Purchase Price is hereby changed to: $ _____ .

☐ **(Additional) Earnest Money.** The (Additional) Earnest Money Deposit is hereby changed to: $ _____

☐ **(Additional) Earnest Money Deposit Date:** The date by which the (Additional) Earnest Money Deposit shall be paid to Escrow Agent is hereby changed to: _____ .

☐ **Building Deposit.** The Building Deposit is hereby changed to: $ _____ .

☐ **Due Diligence Fee.** The Due Diligence Fee paid to Seller is hereby changed to: $ _____ .

☐ **Due Diligence Period.** The expiration date of the Due Diligence Period is hereby changed to _____ at 5:00 p.m., *TIME BEING OF THE ESSENCE.*

☒ **Settlement Date.** The Settlement Date is hereby changed to: _____ May 30, 2017 _____ .
  ☐ *(check only if the following also will apply)* Notwithstanding anything to the contrary in the Delay in Settlement/Closing paragraph in the Contract, if a Delaying Party fails to complete Settlement and Closing within four (4) days following the Settlement Date above, the Delaying Party shall be in breach and the Non-Delaying Party may terminate the Contract in accordance with the Delay in Settlement/Closing paragraph.

☐ **Expenses.** The amount Seller shall pay at Settlement toward Buyer's expenses associated with the purchase of the Property is hereby changed to: $ _____ .

All terms and conditions of the Contract not specifically amended herein shall remain in full force and effect.

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. MAKES NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION.

Buyer: _____ Date _____
          Amged Abdelgadir

Seller: | *Jason M. Pool* |   Date  4/29/2017
        JasonMussaPool
        DocuSigned by:

Buyer: _____ Date _____

Seller: | *Jennifer A. Pol* |  Date  4/29/2017
        JennaJfanedh. Pool
        DocuSigned by:

Entity Buyer:

Entity Seller:

(Name of LLC/Corporation/Partnership/Trust/etc.)

(Name of LLC/Corporation/Partnership/Trust/etc.)

By: _____

By: _____

Name: _____

Name: _____

Title: _____

Title: _____

Date: _____

Date: _____

Page 1 of 1



This form jointly approved by:
North Carolina Bar Association
North Carolina Association of REALTORS®, Inc.



FORM 4-T
Revised 7/2015
© 7/2016

Bestway Realty, 4624 Hwy 49/ Bestway Center Harrisburg, NC 28075
Phone: (705)455-5808          Fax:                    Elizabeth Tauber                                                    Jennifer Pool
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



**CABARRUS COUNTY, NC**                        8/25/2017 8:23:54 AM

**POOL JASON M**

9281 PERSEVERANCE DR

96963

Reval Year: 2016 Tax Year: 2017

Appraised by DK on 06/30/2015 15236 BROOKEDALE COMMONS

COUNTY TAX (100), HARRISBURG CITY TAX (100), HARRISBURG FIRE CITY (100)

LT 131 BROOKEDALE COMMONS PH 2 MP 3

Return/Appeal Notes:

Parcel: 5506 44 6570 0000

PLAT: 64/39/40

ID NO: 01 024 J 0131

CARD NO. 1 of 1

0.190 AC    SRC= Inspe

TW-01    CI- 01  FR- 19  EX-

**PLAINTIFF'S EXHIBIT**

E

| CONSTRUCTION DETAIL | |
|---|---|
| Foundation - 3 | |
| Continuous Footing | 5.00 |
| Sub Floor System - 2 | |
| Slab on Grade- Residential/Commercial | 5.00 |
| Exterior Walls - 10 Aluminum/Vinyl Siding | 31.00 |
| Exterior Walls - 21 Face Brick | 0.00 |
| Roofing Structure - 03 Gable | 7.00 |
| Roofing Cover - 03 Asphalt or Composition Shingle | 3.00 |
| Interior Wall Construction - 5 Drywall/Sheetrock | 20.00 |
| Interior Floor Cover - 12 Hardwood | 10.00 |
| Interior Floor Cover - 14 Carpet | 0.00 |
| Heating Fuel - 03 Gas | 1.00 |
| Heating Type - 04 Forced Air - Ducted | 4.00 |
| Air Conditioning Type - 03 Central | 4.00 |
| Bedrooms/Bathrooms/Half-Bathrooms 6/4/0 | 19.000 |
| Bedrooms BAS - 1 FUS - 5 LL - 0 | |
| Bathrooms BAS - 1 FUS - 3 LL - 0 | |
| Half-Bathrooms BAS - 0 FUS - 0 LL - 0 | |
| Office BAS - 0 FUS - 0 LL - 0 | 0 |
| **TOTAL POINT VALUE ·** | **109.000** |

**BUILDING ADJUSTMENTS**

| Quality | 3 | Average | 1.0000 |
|---|---|---|---|
| Shape/Design | 2 | MF2 | 0.9600 |
| Size | Size | Size | 0.9000 |
| TOTAL ADJUSTMENT FACTOR | | | 0.860 |
| TOTAL QUALITY INDEX | | | 94 |

**MARKET VALUE**

| | USE | MOD | Eff. Area | QUAL | BASE RATE | RCN | EYB | AYB |
|---|---|---|---|---|---|---|---|---|
| | 01 | 01 | 3,432 | 94 | 70.03 | 241843 | 2014 | 2014 |

TYPE: SINGLE FAMILY RESIDENTIAL    SINGLE FAMILY HOME

STYLE: 4 - 2.5 Stories or More

**DEPRECIATION**

Standard 0.02000

% GOOD    98.0

**CORRELATION OF VALUE**

| | MARKET |
|---|---|
| CREDENCE TO | |
| DEPR. BUILDING VALUE - CARD | 237,010 |
| DEPR. OB/XF VALUE - CARD | 2,200 |
| MARKET LAND VALUE - CARD | 50,000 |
| TOTAL MARKET VALUE - CARD | 289,210 |
| | |
| TOTAL APPRAISED VALUE - CARD | 289,210 |
| TOTAL APPRAISED VALUE - PARCEL | 289,210 |
| | |
| TOTAL PRESENT USE VALUE - PARCEL | 0 |
| TOTAL VALUE DEFERRED - PARCEL | 0 |
| TOTAL TAXABLE VALUE - PARCEL $ | 289,210 |

**PRIOR**

| BUILDING VALUE | 237,010 |
|---|---|
| OBXF VALUE | 2,200 |
| LAND VALUE | 50,000 |
| PRESENT USE VALUE | 0 |
| DEFERRED VALUE | 0 |
| TOTAL VALUE | 289,210 |

**PERMIT**

| CODE | DATE | NOTE | NUMBER | AMOUNT |
|---|---|---|---|---|

ROUT: WTRSHD:

**SALES DATA**

| OFF. RECORD BOOK | PAGE | DATE MO | YR | DEED TYPE | Q/U/I | V/I | INDICATE SALES PRICE |
|---|---|---|---|---|---|---|---|
| 11114 | 0053 | 9 | 2014 | SW* | Q | I | 275000 |

HEATED AREA 3,534

**NOTES**

Click on image to enlarge

**SUBAREA**

| TYPE | GS AREA | % | RPL CS | CODE | DESCRIPTION | COUNT | LTH | WTH | UNITS | UNIT PRICE | ORIG % COND | BLDG# | SIZE FACT | AYB | EYB | ANN DEP RATE | OVR | % COND | OB/XF DEPR. VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BAS | 1,272 | 100 | 89078 | 10D | DRIVE CON | | 43 | 18 | 774 | 3.40 | 100 | 1 | 0.93 | 2014 | 2014 | SS | | 90 | 2203 |
| FGD | 447 | 045 | 14076 | | TOTAL OB/XF VALUE | | | | | | | | | | | | | | 2,203 |
| FOP | 87 | 035 | 2101 | | | | | | | | | | | | | | | | |
| FUS | 2,262 | 085 | 134668 | | | | | | | | | | | | | | | | |
| PTO | 120 | 005 | 420 | | | | | | | | | | | | | | | | |
| FIREPLACE | 2 - Pre Fabricated | | 1,500 | | | | | | | | | | | | | | | | |
| SUBAREA TOTALS | 4,188 | | 241,843 | | | | | | | | | | | | | | | | |

BUILDING DIMENSIONS BAS=W40S45E13N3E6N19E9N4E12N19aArea:1272;FOP=W9S3W1S6E10N9Area:87;FGD=N23W12S4W9S19E21Area:447;FUS=W40S45E13N3E6N3E15S1E6 6N40Area:1662;FUS=E40N15W40S15Area:600;PTO=E12N10W12S10Area:120;TotalArea:4188

**LAND INFORMATION**

| HIGHEST AND BEST USE | USE CODE | LOCAL ZONING | FRON TAGE | DEPTH | DEPTH / SIZE | LND MOD | COND FACT | OTHER ADJUSTMENTS AND NOTES RF AC LC TO OT | ROAD TYPE | LAND UNIT PRICE | TOTAL LAND UNITS | UNT TYP | TOTAL ADJST | ADJUSTED UNIT PRICE | LAND VALUE | OVERRIDE VALUE | LAND NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SFR | 0100 | CZ-RV | 65 | 130 | 1.0000 | 0 | 1.0000 | | PS | 50,000.00 | 1.000 | LT | 1.000 | 50,000.00 | 50000 | 0 | 0.190AC |
| TOTAL MARKET LAND DATA | | | | | | | | | | | | | | | 50,000 | | |
| TOTAL PRESENT USE DATA | | | | | | | | | | | | | | | | | |



**PLAINTIFF'S EXHIBIT**
tabbies
F

**Fill in this information to identify your case and this filing:**

Debtor 1     **Jason Michael Pool**
First Name    Middle Name    Last Name

Debtor 2     **Jennifer Ann Pool**
(Spouse, if filing)   First Name    Middle Name    Last Name

United States Bankruptcy Court for the:   WESTERN DISTRICT OF NORTH CAROLINA

Case number

☐ Check if this is an
amended filing

## Official Form 106A/B
## Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

☒ Yes. Where is the property?

1.1

**9281 Perseverance Dr.**
Street address, if available, or other description

Harrisburg    NC    28075-0000
City     State    ZIP Code

Cabarrus
County

What is the property? Check all that apply.

☒ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

Who has an interest in the property? Check one.
☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

'Cabarrus County FMR'

Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.

Current value of the entire property?    Current value of the portion you own?
$275,000.00     $275,000.00

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
Fee Simple

☐ Check if this is community property (see instructions)

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.............................................................➔
$275,000.00

**Part 2:** Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on Schedule G: Executory Contracts and Unexpired Leases.

Debtor 1    Jason Michael Pool
Debtor 2    Jennifer Ann Pool                                              Case number (if known)

3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☐ No

☒ Yes

| 3.1 | Make: | Chevy | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property. |
|---|---|---|---|---|

3.1  Make:      Chevy
     Model:     Silverado
     Year:      2014
     Approximate mileage:          48,600
     Other information:
     VIN # 1GCVKREHXEZ211678
     *NADA Value*

Who has an interest in the property? Check one
☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
    (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.

Current value of the entire property?         Current value of the portion you own?

$24,125.00          $24,125.00

3.2  Make:      Toyota
     Model:     Camry
     Year:      2014
     Approximate mileage:          20,400
     Other information:
     VIN # 4T4BF1FK4ER368186
     *NADA Value*

Who has an interest in the property? Check one
☐ Debtor 1 only
☒ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
    (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.

Current value of the entire property?         Current value of the portion you own?

$14,100.00          $14,100.00

4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories
   Examples: Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☒ No

☐ Yes

5  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.......................................................=>

$38,225.00

**Part 3:**  Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

6. Household goods and furnishings
   Examples: Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ☒ Yes. Describe.....

                    Sofa, Loveseat, King Size Bed, Dining Table and Chairs, Office
                    Furniture, 3 Dressers and any other miscellaneous household
                    goods and furnishings
                    Value Determined by Used Replacement Cost
                    Joint                                                          $3,000.00

7. Electronics
   Examples: Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices
   including cell phones, cameras, media players, games
   ☐ No
   ☒ Yes. Describe.....

2 TV's, 2 Computers, Xbox 360 and any other miscellaneous
electronics
Value Determined by Used Replacement Cost
Joint                                                                                          $800.00

### 8. Collectibles of value

*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

☒ No

☐ Yes. Describe.....

### 9. Equipment for sports and hobbies

*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

☐ No

☒ Yes. Describe.....

Golf Clubs, Guitar, Fishing Poles
Value Determined by Used Replacement Cost
Joint                                                                                          $200.00

### 10. Firearms

*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

☒ No

☐ Yes. Describe.....

### 11. Clothes

*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No

☒ Yes. Describe....

6 Jeans, 3 Dresses, 4 Shoes, 7 T-Shirts, 4 Coats, 10 Shorts                          $400.00

Wife's' Wearing Apparel and Clothing
Value Determined by Used Replacement Cost
Wife                                                                                           $750.00

### 12. Jewelry

*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☐ No

☒ Yes. Describe.....

1/2 Carat Wedding Ring with White Gold, Pandora Charm Bracelet,
Male Debtor's wedding band and other miscellaneous costume
jewelry
Value Determined by Used Replacement Cost                                            $750.00

### 13. Non-farm animals

*Examples:* Dogs, cats, birds, horses

☐ No

☒ Yes. Describe.....

Labrador Retriever, Beagle                                                            $100.00

### 14. Any other personal and household items you did not already list, including any health aids you did not list

☒ No

| Debtor 1 | Jason Michael Pool | | | |
|---|---|---|---|---|
| Debtor 2 | Jennifer Ann Pool | | Case number *(if known)* | |

☐ Yes. Give specific information.....

15.  Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ......................................................................................  **$6,000.00**

## Part 4: Describe Your Financial Assets

Do you own or have any legal or equitable interest in any of the following?

Current value of the portion you own? Do not deduct secured claims or exemptions.

16. **Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
☐ No
☑ Yes.................................................................................................................

| | | Cash | $47.00 |
|---|---|---|---|

17. **Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
☑ Yes........................

| | | | Institution name: | | |
|---|---|---|---|---|---|
| | 17.1. | Checking | USAA : 4265 | | $236.21 |
| | 17.2. | Savings | USAA : 2576 | | $1,028.73 |
| | 17.3. | Checking | USAA : 2879 | | $850.07 |
| | 17.4. | Savings | Navy FCU : 8614 | | $5.00 |
| | 17.5. | Savings | Navy FCU : 6543 | | $5.00 |
| | 17.6. | Checking | NOVA Credit Union : 4460 | | $38.01 |
| | 17.7. | | NOVA Credit Union : 4460 | | $25.00 |
| | 17.8. | Checking | CPCU : 7880 | | $229.08 |
| | 17.9. | | CPCU : 7880 | | $40.38 |

18. **Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
☑ No
☐ Yes...................          Institution or issuer name:

19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture

☒ No

☐ Yes. Give specific information about them..................
          Name of entity:                                        % of ownership:

20. Government and corporate bonds and other negotiable and non-negotiable instruments
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☒ No

☐ Yes. Give specific information about them
          Issuer name:

21. Retirement or pension accounts
    *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☒ No

☐ Yes. List each account separately.
          Type of account:                Institution name:

22. Security deposits and prepayments
    Your share of all unused deposits you have made so that you may continue service or use from a company
    *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☒ No

☐ Yes. ....................           Institution name or individual:

23. Annuities (A contract for a periodic payment of money to you, either for life or for a number of years)

☒ No

☐ Yes............    Issuer name and description.

24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.
    26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☒ No

☐ Yes............    institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit

☒ No

☐ Yes. Give specific information about them...

26. Patents, copyrights, trademarks, trade secrets, and other intellectual property
    *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☒ No

☐ Yes. Give specific information about them...

27. Licenses, franchises, and other general intangibles
    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☒ No

☐ Yes. Give specific information about them...

Money or property owed to you?                                   Current value of the
                                                                 portion you own?
                                    .                            Do not deduct secured
                                                                 claims or exemptions.

28. Tax refunds owed to you

☐ No

☒ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

| | | |
|---|---|---|
| 2016 Tax Refund | Federal and State | $4,155.00 |

29. **Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
    ☒ No
    ☐ Yes. Give specific information......

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security
    benefits; unpaid loans you made to someone else
    ☒ No
    ☐ Yes. Give specific information..

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
    ☒ No
    ☐ Yes. Name the insurance company of each policy and list its value.
                        Company name:                              Beneficiary:                        Surrender or refund
                                                                                                       value:

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because
    someone has died.
    ☒ No
    ☐ Yes. Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
    ☒ No
    ☐ Yes. Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
    ☒ No
    ☐ Yes. Describe each claim.........

35. **Any financial assets you did not already list**
    ☒ No
    ☐ Yes. Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached**
    for Part 4. Write that number here.................................................................................................................    **$6,659.48**

**Part 5.** Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37. **Do you own or have any legal or equitable interest in any business-related property?**
    ☒ No. Go to Part 6.
    ☐ Yes. Go to line 38.

**Part 6.** Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
    ☒ No. Go to Part 7.
    ☐ Yes. Go to line 47.

**Part 7.** Describe All Property You Own or Have an Interest In That You Did Not List Above

53. Do you have other property of any kind you did not already list?
    *Examples:* Season tickets, country club membership

&#x2612; No

□ Yes. Give specific information........

54. Add the dollar value of all of your entries from Part 7. Write that number here ..................................                                    **$0.00**

**Part 8:**    **List the Totals of Each Part of this Form**

| | | | |
|---|---|---|---|
| 55. Part 1: Total real estate, line 2 ................................................................................................ | | | **$275,000.00** |
| 56. Part 2: Total vehicles, line 5 | $38,225.00 | | |
| 57. Part 3: Total personal and household items, line 15 | $6,000.00 | | |
| 58. Part 4: Total financial assets, line 36 | $6,659.48 | | |
| 59. Part 5: Total business-related property, line 45 | $0.00 | | |
| 60. Part 6: Total farm- and fishing-related property, line 52 | $0.00 | | |
| 61. Part 7: Total other property not listed, line 54    + | $0.00 | | |
| 62. Total personal property. Add lines 56 through 61... | $50,884.48 | Copy personal property total | **$50,884.48** |
| 63. Total of all property on Schedule A/B. Add line 55 + line 62 | | | **$325,884.48** |